EMERGENCY ONE, INCORPORAT-
ED, d/b/a American Eagle Fire Appa-
ratus Company, Incorporated, Plain-
tiff–Appellee,

v.

AMERICAN FIREEAGLE, LIMITED,
Defendant–Appellant.

No. 99–2253.

United States Court of Appeals,
Fourth Circuit.

Argued: June 9, 2000

Decided: Sept. 28, 2000

**ARGUED:** L. Lawton Rogers, III, Rogers & Killeen, Alexandria, Virginia, for Appellant. Christopher Brennan Wilson, Grippo & Elden, Chicago, Illinois, for Appellee. **ON BRIEF:** Patrick D. McPherson, Mark C. Comtois, D. Joseph English, Rogers & Killeen, Alexandria, Virginia, for Appellant. Darlene K. Alt, Grippo & Elden, Chicago, Illinois; Hugh Stevens, Everett, Gaskins, Hancock & Stevens, L.L.P., Raleigh, North Carolina; Jennifer L. Sherman, Federal Signal Corporation, Oak Brook, Illinois, for Appellee.

Before MICHAEL and TRAXLER, Circuit Judges, and BUTZNER, Senior Circuit Judge.*

Vacated and remanded by published opinion. Judge MICHAEL wrote the opinion, in which Judge TRAXLER joined.

## OPINION

MICHAEL, Circuit Judge:

Emergency One, Inc. (E–One), a manufacturer of fire trucks and rescue vehicles, brought this trademark infringement suit against American FireEagle, Ltd. (AFE), a competing manufacturer of fire trucks. E–One alleged that AFE's AMERICAN FIREEAGLE mark, a bald eagle superimposed over an American flag, infringed E–One's rights in its AMERICAN EAGLE mark, also a bald eagle superimposed over an American flag. AFE defended on the ground that E–One had abandoned its mark. It also counterclaimed that E–One's renewed use of the AMERICAN EAGLE mark, after AFE had begun using its AMERICAN FIREEAGLE mark, was an infringement of American FireEagle's common law trademark rights. Pre-trial stipulations narrowed the case to a single issue: Had E–One abandoned the AMERICAN EAGLE mark? If yes, E–One was infringing AFE's rights; if no, AFE was infringing E–One's rights. The issue was ultimately submitted to a jury, which found that E–One had not abandoned the AMERICAN EAGLE mark.

AFE appeals, arguing (1) that it was entitled to judgment as a matter of law, (2) that the district court erred in excluding certain evidence, and (3) that the district court failed to instruct the jury properly on the law of trademark abandonment. Because we agree that certain of the district court's instructions to the jury were inadequate, we vacate the judgment (and injunction) and remand for a new trial.

## I.

E–One is a fire and rescue truck manufacturer located in Ocala, Florida. In 1989 E–One bought American Eagle Fire Apparatus Co. (American Eagle), a Gainesville, Florida, fire truck manufacturer started by former E–One employees in 1985. The purchase price for American Eagle was $6.5 million, though only $1.6 million was attributed to the company's tangible assets. The balance was attributed to good will, including the value of the AMERICAN EAGLE trademark. Company officials at E–One believed that American Eagle's excellent reputation in rural markets, combined with the inherent patriotic appeal of its bald eagle and American flag trademark, would enable E–One to increase its sales to rural fire departments.

---

* Senior Judge Butzner heard oral argument in this case but did not participate in the decision. The opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) (1994).

Shortly after the purchase, E–One's president, Ted Fries, spoke to American Eagle's employees in Gainesville, Florida. Among other things, Fries said that E–One intended to continue building American Eagle fire trucks to satisfy existing orders, but that the company ultimately intended to build E–One products in Gainesville. Fries also said that E–One "wouldn't be building American Eagle branded products forever out of Gainesville." Between 1989 and June 1992 E–One built about thirty-five to forty fire trucks to satisfy American Eagle's back orders as well as some new orders that E–One accepted after the purchase. Although the trucks were built according to American Eagle blueprints and in keeping with American Eagle style, some left the factory bearing the E–ONE trademark, while others bore the AMERICAN EAGLE logo and nameplate.

The Gainesville plant was closed shortly after June 1992, ending the manufacture of fire trucks at that facility. However, E–One continued to provide exclusive warranty and repair services on American Eagle trucks. In 1993 and 1994 E–One also refurbished or substantially rebuilt old and damaged American Eagle trucks in a process known as "recycling." E–One would remove the engine, rear axle, transmission, and water pump from a used fire truck. Those components (assuming they were serviceable) would be installed on a new or rebuilt chassis. E–One would then construct a new American Eagle style body for that chassis. As with the brand-new trucks, most left the factory with the E–ONE nameplate. However, one recycled American Eagle truck left the factory in 1994 bearing the AMERICAN EAGLE nameplate and logo. Regardless of what mark appeared on the truck itself, all invoices after the acquisition carried only E–One's name.

By mid–1992 E–One was no longer manufacturing any new fire trucks under the AMERICAN EAGLE brand. However, it promoted the mark in various ways: by selling T-shirts, hats, tote bags, and nameplates bearing the AMERICAN EAGLE logo in "The Fire Locker" (a gift store at the factory), by distributing that merchandise at trade shows, and by requiring that its security guards wear AMERICAN EAGLE badges on their uniforms.

Despite its professed enthusiasm for the AMERICAN EAGLE brand, E–One had no specific plans for use of the mark when it bought the American Eagle company in 1989. E–One first considered using the AMERICAN EAGLE brand on its rescue trucks, but decided that the rescue and fire trucks were already so similar that no advantage would be gained by developing a separate brand. Eventually, E–One decided that the AMERICAN EAGLE mark would best be used to represent a separate product line. It appears that E–One's caution in deciding how to use the AMERICAN EAGLE mark stemmed from a disastrous product launch several years earlier. The company was wary of introducing a new line of trucks and particularly wary of tarnishing a valuable name by associating it with an inferior product.

In 1991 E–One introduced a low cost, limited option fire truck under the E–ONE mark. Around mid–1993 the company considered using the name AMERICAN EAGLE on those trucks, but instead marketed them using the E–One name and descriptive slogans such as "Budget Busters" and "Value and More."

In 1994 Michael Carter founded the defendant corporation, AFE. Carter had worked for American Eagle as a draftsman but left a few months after the company was sold to E–One in 1989. Apparently believing that E–One had abandoned its rights to the AMERICAN EAGLE mark, Carter designed a highly similar mark for AFE, a bald eagle superimposed over an American flag. In February 1994 AFE began using the eagle and flag mark in pre-manufacturing marketing of its fire trucks. In the summer of that same year fire truck dealers began to call both E–

One and AFE with questions about the new company, asking whether E–One had started a new company or distribution arm. E–One complained to AFE that its mark was confusingly similar to the AMERICAN EAGLE mark. When AFE continued to use the mark, E–One sent a letter accusing it of infringement. AFE responded through its lawyers, asserting its belief that E–One had long since abandoned any rights it had to the AMERICAN EAGLE name and to the eagle and flag logo. In September 1995 E–One announced that it would begin selling its low cost, limited option fire trucks under the AMERICAN EAGLE brand.

A year later E–One brought this suit for trademark infringement against AFE. AFE defended on the ground that E–One had abandoned its rights to the mark by discontinuing use with an intent not to resume use in the reasonably foreseeable future. AFE also counter-claimed, alleging that it had acquired the rights abandoned by E–One through adoption and use of its own mark. The parties stipulated that E–One obtained the AMERICAN EAGLE mark when it purchased that company and that the AMERICAN EAGLE and AMERICAN FIREEAGLE marks are confusingly similar. Thus, the only issue was whether E–One had abandoned the mark. After a five-day trial the jury found in favor of E–One, and the district court issued an injunction against AFE's further use of the AMERICAN FIREEAGLE mark. The district court denied AFE's renewed motion for judgment as a matter of law. AFE appeals.

## II.

AFE makes two main arguments on appeal. First, it argues that it was entitled to judgment as a matter of law on the issue of abandonment. Second, AFE argues that the trial court failed to instruct the jury properly on the law of trademark abandonment. We reject AFE's argument that it was entitled to judgment as a matter of law. However, we agree that certain of the district court's instructions to the jury were inadequate. Accordingly, we vacate the judgment and injunction in favor of E–One and remand for a new trial.

## A.

AFE begins by arguing that it was entitled to judgment as a matter of law on the issue of abandonment. AFE contends that E–One's own evidence proved that it had discontinued use of the AMERICAN EAGLE mark for at least three years before it introduced its own line of AMERICAN EAGLE trucks. According to AFE, three years of non-use results in a statutory presumption of abandonment, and E–One failed to rebut that presumption. The district court concluded that E–One only had to produce evidence of its continued use of the mark or its intent to resume such use in order to rebut the presumption. According to the district court, E–One rebutted the presumption by producing evidence that it had continued to use the mark on clothing and promotional merchandise, in the recycling and repairing of American Eagle fire trucks, and on the uniforms of its security personnel. We hold that promotional use of this type or incidental use in recycling and repair is not the "use" required to preserve trademark rights under the Lanham Act. Nonetheless, we conclude that E–One rebutted the statutory presumption by producing evidence that it intended to resume use of the mark on fire trucks. Consequently, AFE was not entitled to judgment as a matter of law.

 Under the Lanham Act a trademark is abandoned when "its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. Thus, a party claiming that a mark has been abandoned must show "non-use of the name by the legal owner and no intent by that person or entity to resume use in the reasonably foreseeable future." *Stetson v. Howard D. Wolf & Assocs.*, 955 F.2d 847,

850 (2d Cir.1992). Non-use for three consecutive years alone, however, constitutes prima facie evidence of abandonment. *See* 15 U.S.C. § 1127. Proof of three consecutive years of non-use thus creates a presumption—a mandatory inference of intent not to resume use. *See Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.,* 892 F.2d 1021, 1025–26 (Fed.Cir. 1989); *Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044–45 (2d Cir.1980). Once the presumption is triggered, the legal owner of the mark has the burden of producing evidence of either actual use during the relevant period or intent to resume use. *See Cerveceria Centroamericana,* 892 F.2d at 1026; *Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 938 (7th Cir. 1989); *Societe de Developments et D'Innovations des Marches Agricoles et Alimentaires—SODIMA—Union de Cooperatives Agricoles v. International Yogurt Co.,* 662 F.Supp. 839, 845 (D.Or.1987). The ultimate burden of proof (by a preponderance of the evidence) remains always on the challenger. *See Rivard v. Linville,* 133 F.3d 1446, 1449 (Fed.Cir.1998); *Cerveceria Centroamericana,* 892 F.2d at 1026.[1]

 Both "use" and "intent not to resume such use" have somewhat specialized meanings in the context of the Lanham Act. "Use" means "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. *See also Exxon Corp. v. Humble Exploration Co.,* 695 F.2d 96, 99–102 (5th Cir.1983). Thus, neither promotional use of the mark on goods in a different course of trade nor mere token use constitute "use" under the Lanham Act. *See Imperial Tobacco, Ltd. v. Philip Morris, Inc.,* 899 F.2d 1575, 1582–83 (Fed.Cir.1990) (promotional use of mark

in sales of whiskey, pens, watches, sunglasses, and food did not constitute use of mark for cigarettes); *Silverman,* 870 F.2d at 47–48 (sporadic licensing of mark for non-commercial purposes was not a use under the Lanham Act); *Humble Exploration,* 695 F.2d at 99–102 (token sales of small quantities of goods with "Humble" trademark to selected purchasers who knew that they were receiving Exxon merchandise were not "uses" under Lanham Act). In addition, for a mark to be "used" on goods it must be "placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale." 15 U.S.C. § 1127.

 Here, the testimony of E–One's own witnesses at trial established that the company discontinued use of the AMERICAN EAGLE mark by mid–1992 when it ceased production of new AMERICAN EAGLE fire trucks. E–One's uses of the mark in the succeeding three-and-one-half years on products other than fire trucks failed to satisfy the statutory requirement of "bona fide use of [the] mark in the ordinary course of trade, and not made merely to reserve a right in [the] mark." 15 U.S.C. § 1127. *See also Imperial Tobacco,* 899 F.2d at 1582–83. Exclusive repair and recycling services like those offered by E–One might be sufficient commercial use of the mark to prevent abandonment, but only if E–One used the mark on the repaired or remanufactured goods or "on documents associated with the goods or their sale." 15 U.S.C. § 1127. *Cf. Coup v. Vornado,*

---

1. Effective January 1, 1996, Congress amended § 1127, changing the period of non-use that establishes a prima facie case of abandonment from two years to the present standard of three years. *See* Uruguay Round Agreements Act § 521, Pub.L. No. 103–465, 108 Stat. 4809 (1994). We need not decide whether the two-year or three-year standard governs this case. Assuming that AFE made

its prima facie case by demonstrating the required period of non-use, only the burden of production shifted to E–One. E–One satisfied that burden of production by presenting evidence of its intent to resume use. At that point, any presumption deriving from the proof of the prima facie case dropped out, and AFE was obligated to prove both discontinued use and intent not to resume use.

*Inc.*, 9 U.S.P.Q.2d 1824, 1825–26 (T.T.A.B. 1988). The evidence at trial was that only one recycled American Eagle truck left the factory with an AMERICAN EAGLE mark attached, and invoices for all repair and recycling services bore only the E–ONE mark. One recycled American Eagle truck with an AMERICAN EAGLE nameplate over the course of three years is no more than a token use which, standing alone, is legally insufficient to disprove abandonment. *See Humble Exploration*, 695 F.2d at 99–102.

■ We therefore conclude that AFE demonstrated that E–One had discontinued use of the AMERICAN EAGLE mark for three years and that E–One failed to rebut that presumption by producing any evidence of the use required by the Lanham Act. However, the case does not end there because E–One did produce evidence that it intended to resume use of the mark on fire trucks. E–One's continuous promotion of the brand by using it on hats, T-shirts, tote bags, and souvenir nameplates is evidence of some intent to resume use of the mark. In addition, E–One executives testified that they actively considered using the AMERICAN EAGLE mark on fire trucks between 1992 and 1995. That testimony was corroborated by an E–One business plan from 1993, which identified the AMERICAN EAGLE mark as one of four possible brand names for a new line of trucks. This evidence of intent to resume use was sufficient to satisfy E–One's burden of production. The evidence also created a triable issue of fact, precluding judgment as a matter of law.

■ AFE contends, however, that E–One's own representatives admitted that their plans to resume use of the mark were indeterminate. At the time of acquisition and at all times up until 1995, E–One had no specific plan to use the AMERICAN EAGLE mark. It is true that the owner of a trademark cannot defeat an abandonment claim, as well as the purposes of the Lanham Act, by simply asserting a vague, subjective intent to resume use of a mark at some unspecified future date. *See Silverman*, 870 F.2d at 46–47. Once the challenger shows discontinued use, the owner must produce evidence of intent to resume use "within the reasonably foreseeable future." *Id.* at 46. *See also Roulo*, 886 F.2d at 938. Requiring the owner to have an intent to use the mark in the reasonably foreseeable future ensures that valuable trademarks are in fact used in commerce as the Lanham Act intends, rather than simply hoarded or warehoused. *See Roulo*, 886 F.2d at 938; *Silverman*, 870 F.2d at 46; *Humble Exploration*, 695 F.2d at 102–03.

Of course, what is meant by the "reasonably foreseeable future" will vary depending on the industry and the particular circumstances of the case. *Cf. Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1060–61 (2d Cir. 1985). Because fire trucks have very long lives (often twenty to thirty years), the mark stays visible, and the good will value of the mark persists long after production of trucks with that mark has ceased. Thus, it might be reasonable for a fire truck manufacturer to spend five or six years considering the reintroduction of a brand, even though the same passage of time would be unreasonable for a maker of a more ephemeral product, say potato chips. E–One produced evidence that because American Eagle had made a product very similar to E–One's, it was necessary for E–One to develop a new product line to avoid duplication. E–One also produced evidence that *its* delay in reintroducing the mark was attributable to its skittishness after an embarrassing experience introducing another brand. Finally, E–One produced evidence that it had paid a substantial sum of money for the AMERICAN EAGLE mark only a few years earlier. Under these circumstances, we cannot say as a matter of law that E–One had no intent to reintroduce the mark within the reasonably foreseeable future. That question was a proper one for the jury. AFE thus was not entitled to judg-

ment as a matter of law on the question of abandonment.

### B.

AFE next argues that the district court committed a number of errors in its instructions to the jury. Specifically, AFE contends that the trial court committed prejudicial error in refusing to give seven of AFE's proffered instructions: (1) that the intent to resume use must be intent to resume use in the reasonably foreseeable future, (2) that the only relevant trademark use is use in the ordinary trade of selling fire trucks, (3) that use of a trademark for fire trucks requires that the mark be affixed to the truck, (4) that a public announcement that trade under a mark will cease and subsequent non-use result in abandonment, (5) that use of a mark merely for the purpose of reserving a mark is not use in the ordinary course of trade, (6) that proof of non-use of a mark for two consecutive years shifts the burden of persuasion to the trademark owner, and (7) that prolonged cessation of use justifies an inference of abandonment and the inference strengthens with the duration of the non-use.

■ We review de novo whether the district court's instructions to the jury were correct statements of law. *See Hardin v. Ski Venture, Inc.*, 50 F.3d 1291, 1293–94 (4th Cir.1995). In reviewing the instructions here, we are mindful that "[d]istrict courts are necessarily vested with a great deal of discretion in constructing the specific form and content of jury instructions," and they are not required to "accept all the suggested instructions offered by the parties." *Id.* "So long as the charge is accurate on the law and does not confuse or mislead the jury, it is not erroneous." *Id.* at 1294. Applying these standards of review, we conclude that the majority of AFE's claims of error are without merit. However, the trial court's failure to give the first and second instructions listed above requires us to set aside the judgment and remand for further proceedings.

Because all of the instruction issues raised by AFE are likely to come up again at a second trial, we will address each of them.

1. *Whether intent to resume use for purposes of trademark abandonment means intent to resume use in the reasonably foreseeable future.* It does. As we have already pointed out, discontinued use of a mark results in abandonment unless the owner of the mark has an intent to resume use in the reasonably foreseeable future. *See Roulo*, 886 F.2d at 938; *Silverman*, 870 F.2d at 46. At some point, even a sincere intent to resume use is so vague that it extends beyond the "reasonably foreseeable future." Where that point lies, however, is an intensely factual question that depends on both the nature of the industry or market in which the mark is used and the particular circumstances of the trademark owner.

■ AFE tendered a correct instruction on the requirement that intent to resume use is intent to resume use in the foreseeable future. The district court refused that instruction and merely told the jury that "[a] cessation of use of a mark with an intent to resume use on a related product is not abandonment." Here, the evidence of E–One's intent to resume use of the AMERICAN EAGLE mark in the reasonably foreseeable future is equivocal. On the record before us, a properly instructed jury could have concluded that E–One had no plan to use the mark at all until AFE arrived on the scene. However, that same jury could have concluded that E–One intended to resume use of the AMERICAN EAGLE name in the reasonably foreseeable future, but was carefully waiting until it had the right product at the right stage of development. *Compare Rivard*, 133 F.3d at 1449–50 (holding that owner's half-hearted efforts over five years to open a beauty salon using trademark, without ever doing so, showed no intent to use mark during the period of non-use, particularly when the owner promptly licensed three such salons upon

learning that another party wanted to use the mark), *with Roulo,* 886 F.2d at 938 (holding that trademark owner's presence at a trade show was sufficient evidence of intent to resume use in the foreseeable future). As a result, the district court committed prejudicial error by failing to instruct the jury that intent to resume use must be intent to resume use in the reasonably foreseeable future. This requires a new trial.

■■■■ 2. *Whether "use" for purposes of the Lanham Act refers only to use in the ordinary course of trade for a particular product.* It does. As we have already discussed, the "use" required to preserve trademark rights does not include mere promotional or token uses. *See* 15 U.S.C. § 1127; *Imperial Tobacco,* 899 F.2d at 1582–83; *Humble Exploration,* 695 F.2d at 99–102. Here, the district court gave the jury the following instruction on use:

> The use of a trademark is the bona fide use of the mark in the ordinary course of trade and not merely a token use to reserve a right in the mark. Use in the ordinary course of trade includes uses that are typical in the particular market or industry in which the mark is used. A bona fide use must be deliberate and continuous and cannot be sporadic or casual.

AFE argues that this instruction permitted the jury to consider E–One's use of the AMERICAN EAGLE mark on promotional goods and its security guards' uniforms as trademark uses. We agree that the reference to "uses that are typical in the particular market or industry" was likely to confuse the jury and distract it from the only use that is relevant to trademark abandonment: use on the goods (the fire trucks) themselves or, if that was impracti-

cable, on "documents associated with the goods or their sale." 15 U.S.C. § 1127. Consequently, the jury could have found that E–One's promotional use of the mark on T-shirts, caps, and the like was "typical" in the fire truck market or industry. Such a finding, based on the district court's overbroad definition of use, could have led the jury to conclude erroneously that E–One never stopped using, and thus never abandoned, the AMERICAN EAGLE mark. This instructional error on "use" also requires that the judgment be vacated.

■■■ 3. *Whether use of a mark in connection with fire trucks requires that the mark be affixed to the truck.* AFE claims that the trial court erred in refusing to instruct the jury that use of a mark on fire trucks requires that the mark be affixed to the truck. AFE, however, did not offer a correct instruction on the requirement that the mark be used in connection with the goods. Instead, it submitted a proposed instruction that merely characterized the evidence.[2] District courts are not required to comment on the evidence, *see Duke v. Uniroyal Inc.,* 928 F.2d 1413, 1421 (4th Cir.1991), and we find no error in the court's refusal to give AFE's proposed instruction. An appropriate instruction is found in the language of the statute itself: a mark is used "when ... it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale." 15 U.S.C. § 1127. If this case proceeds to trial on remand, the jury should be instructed on the requirement that the mark be used in connection with the goods.[3]

2. AFE's proposed instruction read:
 In this case, the products are fire trucks and the trademark is customarily placed on the grill and control panels of the fire truck so that a customer will see the trademark at the same time that he sees the fire truck and thus can distinguish one company's fire

truck from another company's fire truck even though the fire trucks are similar or even identical.

3. As we have already explained, failure to use the mark in connection with the goods is only one element of an abandonment claim. A

**4.** *Whether a public announcement that trade under a mark will cease and subsequent non-use result in abandonment.* AFE contends, in essence, that E–One was estopped from arguing that it had any intent to resume use of the mark by virtue of Fries's statement that E–One "wouldn't be building American Eagle branded products forever out of Gainesville." AFE relies on *Hiland Potato Chip Co. v. Culbro Snack Foods, Inc.,* 585 F.Supp. 17 (S.D.Iowa 1982). Although the court did find estoppel in that case, it did so based on an unequivocal statement that "the Kitty Clover brand name 'will be eliminated' " and that " 'All items will be under the Hiland label.' " *Id.* at 22. Fries's statement that E–One would continue making American Eagle trucks in the immediate future, but not "forever," is not an unequivocal statement of an intention to abandon the mark. The better approach here is simply to consider Fries's statement as one of the circumstances from which intent to abandon might be inferred. *See* 15 U.S.C. § 1127 ("Intent not to resume may be inferred from circumstances."); *Hiland,* 585 F.Supp. at 22 ("A public announcement of intention to discontinue the sale of a product may be a circumstance from which an intent not to resume may be inferred.").

The trial court properly instructed the jury that it was to determine E–One's intent "from all the circumstances in the case" and that it was "permitted to draw such reasonable inferences from the testimony and exhibits" as is "justified in the light of common experience." Those instructions were accurate as a matter of law and permitted the jury to give appropriate weight to Fries's statement.

AFE's remaining three assertions of instruction error can be dealt with

summarily. The trial court instructed the jury that the use of a trade mark does not include "token use to reserve a right in the mark." In light of this instruction, we see no merit to AFE's argument that the jury was led to believe that a trademark owner could reserve rights in that mark without using it or having an intent to resume use. AFE also claims that the jury should have been instructed that proof of two years of non-use shifts the burden of persuasion to the trademark owner. As we have already noted, however, proof of a prima facie case of abandonment shifts only the burden of production to the trademark owner. *See* part II.A., *supra.* Whether the owner has produced evidence sufficient to meet that burden is a question for the court, not the jury. *See Lew v. Moss,* 797 F.2d 747, 750 (9th Cir.1986). Finally, AFE argues that the jury should have been instructed that it could infer intent not to resume use from a prolonged period of non-use and that the inference becomes stronger as the duration of non-use becomes longer. We agree that this is an accurate statement of the law. *See* Restatement (Third) of Unfair Competition § 30 cmt. b. However, we find no error in the district court's decision to give the more general instruction that the jury was permitted to make reasonable inferences that are justified in the light of common experience.

In sum, we hold that the trial court committed prejudicial error by failing to instruct the jury (1) that in order to avoid abandonment a trademark owner who discontinues use of the mark must have an intent to resume use in the reasonably foreseeable future and (2) that the type of use that is relevant to determining whether a trademark owner has discontinued use is use in the course of trade in a particular good.[4]

party claiming abandonment must also show that the owner of the mark intended not to resume its use. E–One offered testimony that some fire departments prefer that the trademark be left off so they can decorate the truck with their own paint, hardware, or emblems. At any retrial the jury should be instructed that in any deliberation of whether E–One intended not to resume use of the mark, the jury may consider evidence offered by the company to explain its failure to use the mark.

**4.** We do not reach AFE's argument that the district court erred in excluding certain evidence.

### III.

For the reasons stated above, we hold that AFE was not entitled to judgment as a matter of law on the issue of abandonment. Rather, E–One produced sufficient evidence of intent to resume use in the reasonably foreseeable future to satisfy its burden of production and create a disputed issue of material fact. However, the trial court's failure to instruct the jury correctly on the meanings of the terms "use" and "intent not to resume such use" in the Lanham Act requires that we vacate the judgment and injunction. The case is remanded for a new trial.

*VACATED AND REMANDED*