UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WILLIAM G. SLOAN,
            *Plaintiff-Appellant,*

v.

AUDITRON ELECTRONIC CORPORATION,
            *Defendant-Appellee.*

No. 02-1787

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, Chief District Judge.
(CA-01-70)

Argued: April 2, 2003

Decided: June 5, 2003

Before TRAXLER and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Perry Wayne Oxley, OFFUTT, FISHER & NORD, Huntington, West Virginia, for Appellant. Megan Dowd Dortenzo, STEPTOE & JOHNSON, P.L.L.C., Clarksburg, West Virginia, for Appellee. **ON BRIEF:** Holly G. DiCocco, OFFUTT, FISHER & NORD, Huntington, West Virginia, for Appellant. Michael T. Smith, STEPTOE & JOHNSON, P.L.L.C., Clarksburg, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

William G. Sloan appeals from an order of the district court awarding summary judgment to Auditron Electronics Corporation ("AEC") on Sloan's claims that Auditron infringed his registered service mark and violated the Anticybersquatting Consumer Protection Act. We affirm.

### I.

In 1965, Sloan applied for federal trademark registration of a stylized depiction of the word "Auditron." The distinctive lettering used in the proposed mark included a large A which was extended to underline the other letters, all of which were upper case except for the letter "i"; additionally, the letters used in the mark were light in color and were emblazoned upon a dark background. Sloan's application indicated that he was using the mark in connection with his "Bookkeeping and Accounting and Tax Service." J.A. 677. Sloan selected the name Auditron as shorthand for "audit electronically." The Patent Office registered AUDITRON in the principal register as a service mark, and it appeared in the same stylized lettering that Sloan submitted with his application.

Sloan, who conducted business in California, continued to use the name Auditron in connection with his accounting services, but in 1968, he stopped using the precise stylization of Auditron that was registered as a service mark. Sloan acknowledges that he then began experimenting with different stylizations of the name Auditron. He claims to have used the *name* Auditron continuously from the time he obtained his registration; the form or style he used to depict the name Auditron, however, has differed from that which was approved for registration. Sloan sold the business to his son Scott in 2000. He contends that he granted permission for Scott to use the registered mark, but that he maintained ownership of the mark.

AEC was incorporated in Pennsylvania in 1978, and its primary business was "the manufacture and distribution of High Fidelity House speakers and components." J.A. 712. AEC was interested in adopting the name Auditron because it contains elements of the words "audio" and "electronics." J.A. 713. Prior to officially selecting Auditron for its corporate name, AEC conducted a trademark search, found Sloan's registered mark, and sought legal advice regarding the availability of Auditron as a corporate name. AEC determined that the name was available for use in connection with high-fidelity speakers because Sloan's mark was "used to identify bookkeeping, accounting and tax services" and thus AEC's use of the name Auditron created "no likelihood of confusion." J.A. 637.

By the mid-1980s, AEC's primary product was no longer high-fidelity speakers; instead, AEC was producing "Zymed," a computer software program designed to help healthcare professionals manage their practices. AEC continued to use the name Auditron after it shifted its primary business interest from audio speakers to computer software.

In 1998, Steven McNaughton, president of AEC, registered the domain name "auditron.com" under which AEC maintained an internet web site to promote the Zymed computer software. In October 1999, just prior to purchasing the accounting business from his father, Scott Sloan attempted to register the domain name "auditron.com" but learned that AEC had already done so.

Sloan then filed this action *pro se*, alleging that AEC's use of the name Auditron constituted trademark infringement under the Lanham Act. *See* 15 U.S.C.A. § 1114 (West 1997 & Supp. 2003); 15 U.S.C.A. § 1125 (West 1998 & Supp. 2003). Sloan also alleged that AEC's use of the name Auditron violated the Anticybersquatting Consumer Protection Act (ACPA). *See* 15 U.S.C.A. § 1125(d) (West Supp. 2003). Sloan did not assert any claims for infringement of a common law trademark, service mark or trade name.

The district court granted summary judgment to AEC on both claims. The court concluded as a matter of law that AEC's use of the Auditron name did not infringe on Sloan's registered mark because Sloan had abandoned the mark and that Sloan had not come forward

with sufficient facts to demonstrate that AEC's use of the name Auditron was likely to create confusion with Sloan's registered mark in the first place. On the cybersquatting claim, the district court determined that Sloan failed to present a factual basis to support the conclusion that, as required by the ACPA, "AEC had a bad faith intent to profit from Sloan's mark" when it registered the auditron.com domain name. J.A. 1051. This appeal followed.*

## II.

Sloan argues that the district court improperly granted summary judgment to AEC on his infringement claim because questions of fact still exist on the issue of abandonment. Under the Lanham Act, a mark has been abandoned "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C.A. § 1127 (West Supp. 2003). A defendant asserting an abandonment defense is required to show two elements: (1) plaintiff's non-use of the mark, and (2) plaintiff's lack of intent "to resume use in the reasonably foreseeable future." *Emergency One, Inc. v. American Fireeagle, Ltd.*, 228 F.3d 531, 535 (4th Cir. 2000) (internal quotation marks omitted). However, if the defendant can show that plaintiff has not used the mark for three consecutive years, then that fact alone "constitutes prima facie evidence of abandonment" and "creates a presumption — a mandatory inference of intent not to resume use." *Id.* at 536; *see* 15 U.S.C.A. § 1127.

Before it could consider the question of whether Sloan abandoned his registered mark, the district court first had to determine the nature of the mark that Sloan registered. Sloan testified to his belief that his trademark rights were in the name Auditron, regardless of the form in which it was depicted, rather than any specific stylization of the name. An applicant for trademark registration is required to submit a drawing of the mark, *see* 37 C.F.R. § 2.51, and must choose one of two types of drawings: (1) a "typed drawing," which is "not limited to the mark depicted in any special form or lettering," 37 C.F.R. § 2.52(a)(1), or (2) a "special form drawing," which is required when

---

*The district court declined to award AEC attorney fees as a "prevailing party" under the Lanham Act. *See* 15 U.S.C.A. § 1117(a) (West Supp. 2003). AEC did not appeal.

the mark uses "words, letters, or numbers in a particular style of lettering; or unusual forms of punctuation." 37 C.F.R. § 2.52(a)(2). The district court properly concluded that Sloan submitted a special form drawing and that "his rights in the word, 'auditron,' are limited to that design and those forms that do not alter the continuing commercial impression of that mark." J.A. 1029. To the extent that Sloan argues on appeal that his registered mark is a word mark simply because he subjectively intended to register such a mark, we reject the argument for the reasons stated in the opinion of the district court.

Having concluded that Sloan had a registered design mark, the district court turned to the issue of non-use, concluding that AEC presented sufficient evidence to show that Sloan had discontinued using the registered mark for at least three consecutive years. Primarily, the district court relied on Sloan's deposition testimony that he had "'used the name Auditron with the line underneath it . . . up until [1968] and then we changed it a little bit. Now we have . . . a pyramid . . . with still the name on it.'" J.A. 1030. The court observed that the record showed that Sloan had not used the registered mark for 30 years. Accordingly, the court concluded that AEC presented prima facie evidence of abandonment, giving rise to the presumption that Sloan had abandoned the mark.

When "the presumption is triggered, the legal owner of the mark has the burden of producing evidence of either actual use during the relevant period or intent to resume use." *Emergency One*, 228 F.3d at 536. In response to AEC's motion for summary judgment, Sloan submitted an affidavit stating that Sloan "experimented with different styles as it pertains to the name Auditron" but that he "continuously used the name Auditron as it appears [in the principal register]." J.A. 943. Sloan claimed that his continuous use of the registered mark included use "on wooden office signs and on various advertising materials." J.A. 943. He did not present to the district court any evidence, however, showing that the registered mark was so used. The district court concluded that Sloan could not create a factual issue by submitting an uncorroborated, conclusory affidavit that contradicted earlier deposition testimony. The court also concluded that even if the affidavit were true, at most it suggested that any continued use of the mark was insufficient to qualify as a "bona fide use of a mark made in the ordinary course of trade." 15 U.S.C.A. § 1127; *see Emergency*

*One*, 228 F.3d at 539 ("[T]he 'use' required to preserve trademark rights does not include mere promotional or token uses.").

On appeal, Sloan resubmits the same argument rejected by the district court. He claims that he produced sufficient evidence to create a question of fact on the issue of non-use solely through his affidavit, in which he claims that he used the registered mark on wooden signs and advertising materials. We agree with the district court that Sloan cannot create a factual question through an eleventh-hour affidavit that contradicts his earlier, fuller deposition testimony that he stopped using "'the name Auditron with the line underneath it'" — that is, the registered design mark — in 1968. J.A. 1030. Sloan executed the affidavit only after receiving AEC's motion for summary judgment which made clear the implications of his failure to use the stylized mark precisely as registered. He proposes to create "[a] genuine issue of material fact . . . where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct," a proposition we have repudiated many times. *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984); *see Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 976 (4th Cir. 1990). He has pointed to nothing else in the record to demonstrate his alleged continued use of the registered mark as opposed to a different stylization of the name Auditron. Therefore, we agree with the district court that Sloan has not created an issue of fact regarding his continued use of the mark.

The district court recognized that even if the owner of a mark discontinues using the mark in its registered form, abandonment can be avoided if the owner was using a variation of the mark where "'the continuing common element of the mark retains its impact and symbolizes a continuing commercial impression.'" J.A. 1033 (quoting 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 17:26 (4th ed. 1996)). The court concluded, however, that a continuing commercial impression theory would be of no benefit to Sloan because there was "no evidence demonstrating that the mark or any permissible variation has been used continuously without significant gaps." J.A. 1034. Sloan argues that the district court misapplied this doctrine for purposes of summary judgment by concluding that Sloan failed to present "continuing commercial impression" evidence to rebut the presumption of abandonment. Instead, Sloan believes that AEC, in order to establish a prima facie case of abandonment, must

show that the other stylizations used by Sloan did *not* create the same continuing commercial impression. We reject this argument. AEC's evidence of non-use was sufficient, by itself, to trigger a presumption that Sloan abandoned the mark; it was Sloan's burden to rebut the presumption. *See Emergency One*, 228 F.3d at 536. One way for Sloan to have rebutted the presumption would have been to demonstrate actual use of the mark under a continuing commercial impression theory; he did not do so. It is not AEC's duty to make Sloan's argument for him and then negate it.

Finally, Sloan contends that even if the district court correctly concluded that he had discontinued use of the registered mark, there was sufficient evidence in the record of Sloan's intent to resume use of the mark to rebut the presumption of abandonment and preclude summary judgment. In support of this argument, Sloan highlights the affidavit that he executed in response to AEC's motion for summary judgment, as well as one executed at the same time by his son Scott. According to Sloan's affidavit, he intended to "maintain ownership" of the mark and "never intended to discontinue the use of [the] trademark." J.A. 943-44. Similarly, Scott Sloan attested that in 2000 Sloan "sold his business to me, but he maintained ownership of the Auditron trademark." J.A. 996. Sloan also contends that his renewal of the registration of his mark in 1987 demonstrates his intent to resume use of the mark.

The district court properly rejected this argument. The court observed that it is not enough for Sloan to have intended merely not to relinquish ownership of the mark. To rebut the presumption of abandonment, he must have evidence that he intended to resume using the mark. The Fifth Circuit has noted the distinction:

> There is a difference between intent not to abandon or relinquish and intent to resume use in that an owner may not wish to abandon its mark but may have no intent to resume its use. . . . An "intent to resume" requires the trademark owner to have plans to resume commercial use of the mark. Stopping at an "intent not to abandon" tolerates an owner's protecting a mark with neither commercial use nor plans to resume commercial use.

*Exxon Corp. v. Humble Exploration Co.*, 695 F.2d 96, 102-03 (5th Cir. 1983). Therefore, "the owner of a trademark cannot defeat an abandonment claim . . . by simply asserting a vague, subjective intent to resume use of a mark at some unspecified future date." *Emergency One*, 228 F.3d at 537. We agree with the district court that Sloan's affidavits do just that — attempt to avoid abandonment merely by asserting a vague intention to resume use. We further agree with the district court that Sloan's renewal of his registration in 1987 is of no avail. Sloan points to no concrete evidence that, in the fifteen years that have passed since 1987, he made bona fide use of the mark or even made plans to do so.

Accordingly, we affirm the district court's opinion awarding summary judgment to AEC on Sloan's infringement claim as a result of Sloan's abandonment of his registered mark. In light of this conclusion, we need not reach the issue of whether, if Sloan had not abandoned the mark, AEC's use of the name Auditron created a likelihood of confusion with Sloan's registered mark.

## III.

Next, Sloan challenges the district court's grant of summary judgment to AEC on Sloan's cybersquatting claim under the ACPA. Congress enacted the ACPA to curb the increasing practice of cybersquatting — "the practice of registering 'well-known brand names as Internet domain names' in order to force the rightful owners of the marks 'to pay for the right to engage in electronic commerce under their own brand name.'" *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 267 (4th Cir. 2001) (quoting S. Rep. No. 106-140 at 5-7 (1999)). A person is liable under the ACPA for cybersquatting if the person:

> (i) has a bad faith intent to profit from [the] mark . . . ; and

> (ii) registers, traffics in, or uses a domain name that —

>> (I) in the case of a mark that is distinctive . . ., is identical or confusingly similar to that mark;

(II) in the case of a famous mark . . ., is identical
or confusingly similar to or dilutive of that mark.

15 U.S.C.A. § 1125(d)(1)(A); *see Virtual Works*, 238 F.3d at 267-68.
Regarding an alleged cybersquatter's bad faith, the ACPA provides a
non-exhaustive list of nine factors for a court to consider, including
"the extent to which the domain name consists of the legal name of
the person or a name that is otherwise commonly used to identify that
person;" "the person's prior use, if any, of the domain name in con-
nection with the bona fide offering of any goods or services;" and "the
person's offer to transfer, sell, or otherwise assign the domain name
to the mark owner or any third party for financial gain without having
used . . . the domain name in the bona fide offering of any goods or
services." 15 U.S.C.A. § 1125(d)(1)(B)(i).

We agree with the district court that Sloan's claim under the ACPA
fails because, at the very least, he presented no evidence to establish
bad faith on the part of AEC in registering the domain name
auditron.com. We affirm for the reasons stated by the district court in
its opinion:

> There is no evidence in this case that AEC had a bad faith
> intent to profit from Sloan's mark. AEC has operated under
> the trade name "Auditron Electronics Corporation" since
> 1978, and the record evinces that it obtained a legal opinion
> from its attorney prior to using the name "auditron."
> Although aware of Sloan's mark, its attorney advised AEC
> that there was no likelihood of confusion between its use of
> the word "auditron" and Sloan's use. While, over time, its
> focus has changed from manufacturing and distributing high
> fidelity speakers to manufacturing and distributing a man-
> agement software product, its broad articles of incorporation
> permitted this change.

> . . . [AEC's] niche of medical billing, specifically involv-
> ing a product that enables healthcare providers to submit
> claims to third party payers, is sufficiently dissimilar from
> the general accounting, bookkeeping, and tax services for
> which Sloan claims to have used his mark. Moreover, in
> 1998, AEC had a legitimate reason for registering

AUDITRON.COM as its domain name, after having used the trade name, "auditron," for approximately 20 years. AEC legitimately uses its website to sell its specialized product, ZyMed, and has not offered to sell the website to others.

. . . [T]here is no evidence that AEC actually attempted, or even contemplated an attempt, to sell the domain name to Sloan or anyone else.

J.A. 1051-53.

### IV.

For the reasons set forth above, we hereby affirm the opinion of the district court.

*AFFIRMED*