**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-1941**

_____

SHEILA WEBB,

        Plaintiff – Appellee,

    v.

LEON LOTT, in his official capacity as Sheriff of the Richland County Sheriffs Department,

        Defendant – Appellant,

    and

CAMERON DUECKER,

        Defendant.

_____

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Cameron McGowan Currie, Senior District Judge.  (3:19-cv-02031-CMC)

_____

Argued:  May 8, 2024                    Decided:  August 21, 2024

_____

Before KING and RICHARDSON, Circuit Judges, and Gina M. GROH, United States District Judge for the Northern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Groh wrote the opinion, in which Judge King and Judge Richardson joined.

_____

**ARGUED:** Andrew Lindemann, LINDEMANN LAW FIRM, P.A., Columbia, South Carolina, for Appellant. Christopher Stephen Truluck, TRULUCK LAW FIRM LLC, Columbia, South Carolina, for Appellee. **ON BRIEF:** Robert D. Garfield, Steven R. Spreeuwers, CROWE LAFAVE GARFIELD & BAGLEY, LLC, Columbia, South Carolina, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

GROH, District Judge:

The facts of this case are uncontested and unsettling. A former Richland County Sheriff's Deputy assaulted Ms. Webb, a 58-year-old woman, who had called 911 on her brother for unlawfully using their incapacitated mother's car. Instead of handling the situation any number of ways that would have been appropriate, then Deputy Duecker ("Duecker") entered Ms. Webb's home without a warrant or probable cause and repeatedly tased her in her own bed while attempting to place her under arrest.

The entire incident was captured on Duecker's body-worn camera. The footage is disturbing. When Duecker's supervisor arrived at Ms. Webb's home, he offered a telling comment about the situation: "that is a seventy-year-old woman, you tased her, what the fuck, what happened?" Duecker was fired from the Sheriff's Department later the same month. A criminal investigation followed, and Duecker was charged with assault and battery, third degree.

Ms. Webb sued Duecker and the Sheriff, asserting claims under federal and South Carolina law, respectively. The jury found in Ms. Webb's favor and awarded her $50,000 in damages from Duecker and $500,000 from Sheriff Lott. The award against the Sheriff was reduced by the district court to $300,000 in accordance with South Carolina's Tort Claims Act. S.C. Code § 15-78-120(a)(1).

Sheriff Lott asks the court to consider four issues in this appeal. Did the district court err by 1) excluding evidence of Duecker's termination and criminal prosecution; 2) denying the Sheriff's motion to bifurcate; 3) instructing the jury incorrectly on certain state

3

law claims; and 4) granting judgment as a matter of law in Ms. Webb's favor regarding the Sheriff's crime of moral turpitude defense instead of submitting an instruction to the jury?

**I. The district court did not err when it excluded after-the-fact evidence of Duecker's termination and criminal prosecution.**

Sheriff Lott argues that the district court erred in excluding evidence of Duecker's termination and subsequent criminal prosecution. We review a district court's decision concerning admissibility of evidence for an abuse of discretion, which we will not find unless the decision was "arbitrary and irrational." *United States v. Blake*, 571 F.3d 331, 346 (4th Cir. 2009) (quoting *United States v. Weaver,* 282 F.3d 302, 313 (4th Cir. 2002)). We find no abuse of discretion here.

The Sheriff argues "the district court eliminated a key defense for Sheriff Lott and disallowed key evidence from being presented to the jury, which was highly prejudicial to Lott's defense." Appellant's Br. at 17–18. Duecker's termination and prosecution can hardly be described as "key evidence" in this case. The body camera footage is the key evidence. What the Sheriff did in the weeks and months that followed is not germane to Ms. Webb's claims. Instead, this is a perfect example of after-the-fact evidence that was irrelevant to the issues before the jury.

The Sheriff avers, without explanation, that evidence of Duecker's termination, arrest, and prosecution would have supported his moral turpitude defense. How Duecker's employer responded to his conduct is not the relevant inquiry for determining whether that conduct constituted a crime of moral turpitude: Duecker's actions are determinative. The district court and jury were able to view Duecker's actions firsthand from the body camera

4

footage. The Sheriff's opinion about Duecker's conduct was neither necessary nor relevant for the questions before the district court and jury. The district court did not abuse its discretion by excluding evidence of Duecker's termination and criminal prosecution.

**II. The district court did not err by denying the Sheriff's motion to bifurcate.**

Sheriff Lott moved the district court to bifurcate the trial by splitting the federal and state claims, which would have resulted in separate trials for each defendant. Rule 42(b) permits a court to order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize . . . ."

The district court entered a well-reasoned order denying the motion to bifurcate. After weighing the facts and circumstances of the case against the objectives enumerated in Rule 42, the court found that Sheriff Lott failed to meet his burden of proving that bifurcation satisfied the Rule. We agree.

Moreover, this argument necessarily relies upon the premise that the district court incorrectly excluded after-the-fact evidence of Duecker's termination and prosecution. But, as explained above, the district court did not err in this regard. Thus, with the foundation of Sheriff Lott's argument removed, the remainder is unable to stand on its own. Sheriff Lott was not prejudiced by a joint trial and has failed to demonstrate any abuse of discretion by the district court in denying the motion to bifurcate.

**III. The district court's instructions of state law to the jury were appropriate.**

Sheriff Lott next contends the district court instructed the jury contrary to South Carolina law as to the assault, battery, false arrest, and false imprisonment claims. Because "we accord the district court much discretion" in fashioning its charge, Sheriff Lott's

5

burden to successfully challenge any instruction is an onerous one. *Teague v. Bakker*, 35 F.3d 978, 985 (4th Cir. 1994); *see also Noel v. Artson*, 641 F.3d 580, 586 (4th Cir. 2011). We do not review challenged jury instructions in isolation. Instead, they must be reviewed within the context of the whole charge, practically rather than technically, and for an abuse of discretion. *See Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996); *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1987).

"Instructions will be considered adequate if construed as a whole, and in light of the whole record, they adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the [objecting] party." *Bunn v. Oldendorff Carriers GmbH & Co. KG*, 723 F.3d 454, 468 (4th Cir. 2013) (quotation omitted). "We review de novo whether the district court's instructions to the jury were correct statements of law." *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 538 (4th Cir. 2000). "Even if a jury was erroneously instructed, however, we will not set aside a resulting verdict unless the erroneous instruction *seriously* prejudiced the challenging party's case." *Bunn*, 723 F.3d at 468 (quotation omitted).

As to the assault and battery instructions, Sherriff Lott offers only the following argument to this court: "The district court's reliance on *Roberts v. City of Forest Acres*, 902 F. Supp. 662 (D.S.C. 1995), is misplaced in that the court in *Roberts* never addressed whether a police officer acts within the scope of his official duties in committing an assault or battery. The *Roberts* decision addresses only the officer's liability and not the agency's liability." Appellant's Br. at 28–29. This argument challenges the district court's

6

instruction that "when a sheriff's deputy uses force greater than is reasonably necessary under the circumstances, the agency may be liable for battery."

First, we find no legal error in the district court's instructions. As noted in the response brief, Sheriff Lott "makes no specific argument with regard to the district court's instruction on assault" and as to the battery instruction, "only generally alleges prejudice and does not identify how the language of the instruction was incorrect." Appellee's Br. at 38. The district court's instruction comes from this court's decision in *Scott v. Vandiver*, 476 F.2d 238, 243 (4th Cir. 1973) ("Assault by a sheriff's deputy in the performance of his duties is among the specific acts for which a sheriff is liable." (quoting *Rutledge v. Small*, 192 S.C. 254, 6 S.E.2d 260, 261 (1939)). The district court changed only the word "is" to "may be" liable, which was correct and to Sheriff Lott's benefit.

Turning to the instruction on the false arrest/false imprisonment claim, Sheriff Lott avers it contains "several errors of law." Appellant's Br. at 29. Specifically, the Sheriff argues that the district court should not have included language about a warrant or exigent circumstances, and by doing so, the court "in effect, invited a finding of liability where the deputy arrests without a warrant." *Id.* at 30.

The jury in this case was instructed that "[t]he fundamental issue in determining the lawfulness of restraint in this case is whether there was a warrant, or probable cause accompanied by an exigent circumstance to arrest Plaintiff without a warrant. In the absence of either of these, the restraint is unlawful."

When this instruction is viewed within the whole charge and against the backdrop of the facts of this case, it clearly stated the law and properly instructed the jury. The false

7

imprisonment claim here contained some unusual nuances because the person who was arrested was in their home. It is undisputed that no warrant was issued for this arrest. Therefore, *Dorn v. Town of Prosperity*, 375 F. App'x 284 (4th Cir. 2010), is of no moment. Because the arrest took place in a private home, the officer was required to have a warrant or probable cause and exigent circumstances for the arrest. The district court did not abuse its discretion in charging the jury, and the law within the instructions is correctly stated.

**IV. The district court properly granted Ms. Webb's motion for judgment as a matter of law on the moral turpitude defense.**

Sheriff Lott argues the district court erred by declining to instruct the jury on his moral turpitude defense. What is a "crime of moral turpitude" according to South Carolina law? "South Carolina has applied a traditional framework, defining moral turpitude as 'an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.'" *Baddourah v. McMaster*, 433 S.C. 89, 108, 856 S.E.2d 561, 571 (2021) (quoting *State v. Horton*, 271 S.C. 413, 414, 248 S.E.2d 263, 263 (1978) (cleaned up)).

In *Baddourah*, the court also noted that "the moral turpitude standard lacks absolute precision in American law." 433 S.C. at 107, 856 S.E.2d at 570. Indeed, South Carolina's framework for determining whether a crime is one of moral turpitude is reminiscent of Justice Stewart's infamous test for obscenity. *See Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (concurring) (explaining, "I know it when I see it"); *see also* Julia Ann Simon-Kerr, *Moral Turpitude*, 2012 UTAH L. REV. 1001, 1003 n.15 (2012).

8

The Supreme Court of South Carolina has explained, "assault of a high and aggravated nature, and assault and battery of a high and aggravated nature are not always crimes of moral turpitude, [but] they may be depending on the facts as particularized in the indictment." *In re Lee*, 313 S.C. 142, 143–44, 437 S.E.2d 85, 86 (1993). To determine whether a crime involves moral turpitude sometimes requires a review of the facts. "In those cases, determining whether an offense qualifies as a crime involving moral turpitude involves consideration of the nature of the crime as defined by law as well as the particularized facts contained in the indictment." *Baddourah*, at 108–09, 571 (citing *State v. Bailey*, 275 S.C. 444, 446, 272 S.E.2d 439, 440 (1980)).

"Under South Carolina's moral turpitude framework, we focus 'primarily on the duty to society and fellow man [that] is breached by the commission of the crime.'" *Baddourah*, at 111, 573 (quoting *State v. Ball*, 292 S.C. 71, 74, 354 S.E.2d 906, 908 (1987)). Previously, *Ball* was overruled in part, but the court "retain[ed] the test articulated in *Ball* for determining whether a crime qualifies as one of 'moral turpitude[.]'" *State v. Major*, 301 S.C. 181, 184, 391 S.E.2d 235, 237 (1990).

It is from within this nebulous framework we must determine whether Duecker's third-degree assault and battery of Ms. Webb could qualify as a crime of moral turpitude. The appellant contends the district court erroneously determined the evidence in this case was so lacking that the question was not appropriate to be put before the jury and judgment as a matter of law was warranted. The district court found this immunity defense was unavailable to Sheriff Lott because the facts in this case did not establish there was "an act of baseness, vileness, or depravity." J.A. 1364.

9

"A person commits the offense of assault and battery in the third degree if the person unlawfully injures another person . . . ." S.C. Code Ann. § 16-3-600(E)(1). The affidavit accompanying an arrest warrant for Duecker states, "he did unlawfully injure the victim by grabbing, pulling, and repeatedly tasing the victim while attempting an unlawful arrest." J.A. 39. To be clear though, "the measure of moral turpitude in South Carolina is not based on the severity of physical injury, as even offenses that do not involve physical harm or felonies have been designated as crimes of moral turpitude." *Baddourah*, at 111, 573.

Indeed, mere possession of cocaine is a crime of moral turpitude in South Carolina, yet simple possession of marijuana is not. *Ball*, 292 S.C. at 74, 354 S.E.2d at 908 *with State v. Harvey*, 275 S.C. 225, 227, 268 S.E.2d 587, 588 (1980). Even criminal conduct that is likely to produce death or actually results in great bodily injury is not automatically classified as a crime of moral turpitude. "[T]he crime of assault and battery of a high and aggravated nature does not necessarily constitute a crime of moral turpitude[.]" *Bailey*, 275 S.C. at 446, 272 S.E.2d at 440.

In its rulings after the close of evidence and on posttrial motions, the district court held Sheriff Lott did not produce sufficient evidence that Duecker committed a crime of moral turpitude, and consequently, it granted Ms. Webb's motion for judgment as a matter of law on Lott's defense. The district court found that an act of baseness, vileness, or depravity must be present to find Duecker committed a crime of moral turpitude.

Considering the testimony and other evidence admitted during trial, the district court found there was no evidence Duecker committed an act of baseness, vileness, or depravity. Accordingly, the district court found Sheriff Lott failed to produce sufficient evidence to

10

support the affirmative defense Duecker committed a crime of moral turpitude. The district court reaffirmed this ruling during posttrial motions when Sheriff Lott moved for a new trial on the same basis.

Duecker's conduct—repeatedly tasing an unarmed 58-year-old woman in her house while unlawfully arresting her—instinctively feels like conduct that could be described using the words "moral turpitude." But, as the district court concluded from the evidence admitted during trial, Duecker used his taser in a misguided and inappropriate effort to gain Ms. Webb's compliance rather than through ill will or malicious intent to cause her harm.

The district court's fact-based inquiry here was appropriate. There can be no doubt that in a situation like this "the surrounding facts . . . determine whether moral turpitude is involved." *State v. Hall*, 306 S.C. 293, 296, 411 S.E.2d 441, 443 (1991). The video footage of Duecker's conduct shows a man who lost control over the situation and lacked the wherewithal to properly determine what to do next.

He was wrong about his lawful ability to effect an arrest of Ms. Webb in her home under the circumstances, and he was wrong to force her into compliance with a taser. However, the video clearly shows this misguided man politely calling Ms. Webb "Ma'am" and pleading with her to comply with his commands. Nothing about his behavior indicates that he was motivated by depravity. Instead, he appears to mistakenly believe he is lawfully arresting Ms. Webb, and according to his testimony, used his taser because he "had been trained it was the least likely to cause serious injury." J.A. 593.

Sheriff Lott argues the district court was wrong to conclude there must be an act of baseness, vileness, or depravity. Instead, he argues "[t]hat is the very issue that the State

11

Supreme Court clarified in *Baddourah*." Appellant's Br. at 22. The decision in *Baddourah* does not have the reach Sheriff Lott suggests: "Our holding today is limited to the issue before the Court, a charge of second-degree domestic violence involving an allegation of physical violence 'likely to result in moderate bodily injury.'" 856 S.E.2d at 574, n.11.

Thus, *Baddourah* did not overrule or abandon precedent. Although it clarified there is a focus on the duty to society and fellow man breached by the commission of a crime, it did not abandon the required act of baseness, vileness, or depravity.

The Supreme Court of South Carolina has consistently stated the test to determine a crime of moral turpitude. In a case where an individual used his public office to attempt to obtain sexual favors, the court found those "facts demonstrate a vileness and baseness which are sufficient to make them crimes of moral turpitude." *Matter of Lee*, 313 S.C. 142, 144, 437 S.E.2d 85, 86 (1993). The inquiry is not limited only to an individual's duty to society and fellow man or overly concerned with bodily injury. The inquiry is holistic.

Courts must find an underlying act that is depraved or vile coupled with a duty to others or society. Here, the district court correctly determined that Sheriff Lott did not produce sufficient evidence to warrant a crime of moral turpitude affirmative defense instruction and judgment as a matter of law in Ms. Webb's favor was appropriate.

\*          \*          \*

The district court's decision is thus

*AFFIRMED*.

12