**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-2211**

SIMPLY WIRELESS, INC.,

Plaintiff – Appellant,

v.

T-MOBILE US, INC., f/k/a T-Mobile USA, Inc.; T-MOBILE USA, INC.,

Defendants – Appellees.

**No. 22-2236**

SIMPLY WIRELESS, INC.,

Plaintiff – Appellant,

v.

T-MOBILE US, INC., f/k/a T-Mobile USA, Inc.; T-MOBILE USA, INC.,

Defendants – Appellees.

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, Senior District Judge.  (1:21-cr-00597-AJT-JFA)

Argued:  December 6, 2023                    Decided:  August 13, 2024

Before DIAZ, Chief Judge, and KING and RUSHING, Circuit Judges.

Vacated and remanded by published opinion.  Judge King wrote the majority opinion, in which Chief Judge Diaz joined.  Judge Rushing wrote an opinion concurring in the judgment.

**ARGUED:**  Robert Litowitz, KELLY IP, LLP, Washington, D.C., for Appellant.  Joseph J. Mueller, WILMERHALE LLP, Boston, Massachusetts, for Appellees.  **ON BRIEF:** Sean Patrick Roche, CAMERON/MCEVOY, PLLC, Fairfax, Virginia; David Michael Kelly, Saul Cohen, Shelby McGowan, KELLY IP, LLP, Washington, D.C.; John R. Gerstein, Gabriela Richeimer, CLYDE & CO US LLP, Washington, D.C., for Appellant. Brittany Blueitt Amadi, Joss Berteaud, Washington, D.C., Gideon A. Hanft, New York, New York, Michaela P. Sewall, WILMER CUTLER PICKERING HALE AND DORR LLP, Boston, Massachusetts, for Appellees.

2

KING, Circuit Judge:

Plaintiff Simply Wireless, Inc. is a Virginia telecommunications company headquartered in McLean, Virginia, within Fairfax County of the Old Dominion. Simply Wireless has operated for about 27 years and has used multiple trademarks, including the trademark SIMPLY WIRELESS. In 2021, Simply Wireless initiated this civil action in the Eastern District of Virginia alleging, inter alia, that defendants T-Mobile US, Inc. and T-Mobile USA, Inc. (collectively "T-Mobile") had infringed Simply Wireless's common law ownership of a trademark called SIMPLY PREPAID.[1] After discovery, Simply Wireless and T-Mobile submitted cross-motions for summary judgment to the district court. Following briefing and argument by counsel, the court — on October 24, 2022 — awarded summary judgment to T-Mobile. *See Simply Wireless, Inc. v. T-Mobile US, Inc.*, No. 1:21-cv-00597 (E.D. Va. Oct. 24, 2022), ECF No. 337 (the "Summary Judgment Order").[2] On appeal, Simply Wireless contends that the summary judgment award made to T-Mobile is erroneous and must be vacated, in that genuine disputes of material fact

---

[1] For clarity, we refer to the relevant trademarks in capitalized definitions — that is, as (1) SIMPLY WIRELESS, and (2) SIMPLY PREPAID. The lower-case term "Simply Wireless" refers to the plaintiff itself, which has owned both of the capitalized trademarks.

[2] After filing its Summary Judgment Order under seal on October 24, 2022, the district court gave the parties an opportunity to propose redactions. The court responded to those proposals and published a slightly redacted version of the Summary Judgment Order in the Federal Supplement. *See Simply Wireless, Inc. v. T-Mobile US, Inc.*, 638 F. Supp. 3d 644 (E.D. Va. 2022). The sealed version of the Summary Judgment Order is relied on herein.

3

have been presented, and a jury trial is therefore warranted.  As explained herein, we agree with Simply Wireless and thus vacate and remand.

## I.

In reciting the relevant facts, we accept the evidence in the light most favorable to Simply Wireless, as the non-moving party with respect to the summary judgment award. We also draw all reasonable inferences in favor of Simply Wireless.  *See George & Co. v. Imagination Ent. Ltd*., 575 F.3d 383, 392 (4th Cir. 2009).

## A.

Since 1997, Simply Wireless has offered, promoted, and sold cell phones, accessories, and "prepaid airtime."[3]  Under its trademark SIMPLY WIRELESS (which was registered under federal law), Simply Wireless operated brick-and-mortar retail stores until 2009.  Thereafter, Simply Wireless either closed those stores or converted them into retail stores that were branded under another trademark.

In addition to its various retail locations, Simply Wireless for several years sold prepaid airtime through its website.  More specifically, from 2002 through 2008, Simply Wireless offered prepaid airtime for sale — under its trademark SIMPLY PREPAID — through its online store, located at www.simplyprepaid.com (the "Simply Prepaid website").  During that lengthy period, Simply Wireless also sold third-party wireless

---

[3] "Prepaid airtime" enables a phone user who has not entered into a phone contract with a cellular services provider to nevertheless use airtime services by paying in advance.

4

phones and accessories to its customers through home shopping television networks, including those called "HSN" and "QVC." When Simply Wireless filled such purchase orders, it included a "thank you" letter that described how customers could reload their phones when an allotment of airtime ran low or was depleted. *See* J.A. 782.[4] In those letters, Simply Wireless encouraged its customers to visit the Simply Prepaid website to refill airtime. Between 2002 and 2008, the trademark SIMPLY PREPAID generated more than $20 million in revenue for Simply Wireless. And, from 2002 to 2019, Simply Wireless visibly displayed its trademark SIMPLY PREPAID in its Virginia headquarters in Fairfax County, along with several trademarks of Simply Wireless's other brands. *Id.* at 681 (explaining that SIMPLY PREPAID was displayed in signage on the walls throughout the office prior to 2012 and on the front reception desk from 2012 to 2019).

Beginning in 2009, Simply Wireless paused its sales of prepaid airtime using the trademark SIMPLY PREPAID and the Simply Prepaid website. The website was then inactive from 2009 until about August 2014. According to a Declaration filed herein and made by Simply Wireless's CEO Steven Qureshi (the "CEO Declaration," or simply the "Declaration"), however, Simply Wireless has never intended to abandon its trademark SIMPLY PREPAID.[5] Indeed, Qureshi states explicitly that Simply Wireless always

---

[4] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[5] The CEO Declaration contains a statement of CEO Qureshi that is supported by 16 exhibits, referred to by Simply Wireless as "corroborating documentary evidence." *See* Br. of Appellant 2.

intended to resume use of the trademark SIMPLY PREPAID. And he confirms that Simply Wireless continuously sought business opportunities for its SIMPLY PREPAID trademark. More specifically, ¶ 10 of the CEO Declaration recites that:

> 10.    Beginning in 2009, Simply Wireless decided to pause sales of prepaid airtime refills through www.simplyprepaid.com. This decision was prompted by an industry-wide shift away from prepaid refills (like the ones sold through SIMPLY PREPAID). Despite this, Simply Wireless never intended to abandon SIMPLY PREPAID. I and Simply Wireless' co-owner, my brother Robert Qureshi, always intended to resume use of the SIMPLY PREPAID trademark, continuously sought business opportunities for using SIMPLY PREPAID, and resumed its use in 2012.

*See* J.A. 676.

The CEO Declaration then identifies specific examples of steps that Simply Wireless undertook in 2011 and 2012 in connection with resuming its use of the trademark SIMPLY PREPAID:

> 11.    For example, in early 2011, Simply Wireless began negotiating with Ignite Media, an online retail promotional company, about selling cellular phones and airtime via the well-trafficked retail website www.topTVstuff.com. Attached as Exhibit 6 are representative examples of communications between Simply Wireless and Ignite Media during this time frame. Those negotiations focused on the use of the SIMPLY PREPAID mark, resulting in sales in 2012 under the SIMPLY PREPAID mark for sales of prepaid mobile phones, airtime, and accessories.

*See* J.A. 676-77.

As evidence of Simply Wireless's intentions and resumption efforts concerning its trademark SIMPLY PREPAID, the CEO Declaration emphasized Exhibit 6 thereof — an email sent by a retail promotional company called Ignite Media to CEO Qureshi of Simply Wireless on January 6, 2011. Included in that email was a slide deck consisting of 12 slides. Focused on what it called Simply Wireless's "2011 Objectives," the slide deck

6

detailed plans for online marketing and sales of wireless phones, accessories, and prepaid airtime by Simply Wireless — using its trademark SIMPLY PREPAID — in addition to describing Ignite Media's marketing capabilities. *See* J.A. 903-14. Each of the 12 slides provided by Ignite Media was stamped with SIMPLY WIRELESS. The slide deck underlying the 2011 negotiations repeatedly used the term "Simply" and, as the CEO Declaration explicitly states, "focused on the use of the SIMPLY PREPAID mark." *Id.* at 677. The slide deck also spoke of, for example, "Simply Making an Impact" through "Simply Top Partnerships" for the marketing of wireless phones and accessories. *Id.* at 912-14.

In July 2012, Ignite Media forwarded an unsigned proposed agreement to Simply Wireless that related to their joint partnership's marketing of cell phones and prepaid airtime in connection with the trademark SIMPLY PREPAID, through the website called "toptvstuff.com." And Ignite Media addressed the proposed agreement to "Simply Wireless d/b/a/ Simply Prepaid Inc.," explicitly demonstrating that Simply Wireless had informed Ignite Media of its intention to use the trademark SIMPLY PREPAID. *Id.* at 897. In the event the partnership between Ignite Media and Simply Wireless terminated, the proposed agreement also identified several companies that Simply Wireless might promptly begin doing business with. Among the companies identified was "simplyprepaid.com," further demonstrating that Simply Wireless intended to continue using its trademark SIMPLY PREPAID, whether or not its partnership with Ignite Media succeeded. *Id.* at 901.

7

On July 31, 2012, approximately two weeks after Ignite Media delivered the proposed agreement, Simply Wireless began using the trademark SIMPLY PREPAID in connection with sales through toptvstuff.com. *See* J.A. 677, 703. The results of those transactions were modest, but they were certainly multiplicitous. During 2012 and 2013, Simply Wireless earned only about $15,500 from sales under the trademark SIMPLY PREPAID, but engaged in 277 transactions with 243 consumers in 44 states. *Id.* at 678. Following its use of toptvstuff.com to make sales through April 2013, Simply Wireless again temporarily ceased its use of the trademark SIMPLY PREPAID. *Id.* at 708.

B.

Retail dealers for T-Mobile — a major competing cellular provider — began operating retail brick-and-mortar stores under the trademark SIMPLY PREPAID in June 2014.[6] On August 13, 2014, T-Mobile filed an application with the United States Patent and Trademark Office (the "PTO") to register SIMPLY PREPAID as its own trademark. And Simply Wireless promptly learned of what it considered to be T-Mobile's illegal use of SIMPLY PREPAID as a T-Mobile trademark. On October 2, 2014, Simply Wireless applied — in a competing application — to register its trademark SIMPLY PREPAID with

---

[6] Simply Wireless had used its trademark SIMPLY PREPAID for several years before T-Mobile's alleged acts of infringement in 2014. And Simply Wireless's extensive use of the trademark SIMPLY PREPAID — as the district court recognized in its Summary Judgment Order — resulted in Simply Wireless's legal ownership of SIMPLY PREPAID as a valid "common law trademark." *See* Summary Judgment Order 18-19.

the PTO.[7]  Simply Wireless thereafter launched a revamped Simply Prepaid website, although it did not begin offering prepaid cell phones for sale through the website until 2016.[8]

## C.

### 1.

In 2015, Simply Wireless first sued T-Mobile for, inter alia, trademark infringement, in the Eastern District of Virginia.  And T-Mobile successfully moved in the district court for dismissal of that lawsuit in favor of arbitration, which this Court affirmed in 2017.  *See Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 523 (4th Cir. 2017), *abrogated by Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019).  After the arbitrator determined that Simply Wireless's claims in its 2015 lawsuit against T-Mobile were not subject to arbitration, Simply Wireless initiated this lawsuit against T-Mobile — in May 2021 — alleging, inter alia, claims of common law trademark infringement and trademark dilution.[9]

---

[7] Because of this litigation, the PTO's administrative proceedings concerning the trademark SIMPLY PREPAID have been stayed.

[8] From 2016 to 2018, Simply Wireless earned approximately $6,500 on sales of prepaid cell phones through the Simply Prepaid website.  In addition to its sales through the Simply Prepaid website, Simply Wireless also earned more than a million dollars in 2015 and 2016 through sales on Amazon Marketplace, an e-commerce platform that allows vendors like Simply Wireless to sell products through the Amazon website.  Again, from 2002 to 2019, Simply Wireless consistently displayed its trademark SIMPLY PREPAID in its headquarters in Fairfax County.

[9] In its Complaint of May 2021, Simply Wireless alleged four counts of trademark infringement.  Counts I and III alleged federal trademark infringement under the Lanham (Continued)

In December 2021, the district court scheduled a summary judgment hearing for February 2022. Prior to the scheduled hearing, on January 18, 2022, Simply Wireless and T-Mobile filed competing motions for summary judgment. Simply Wireless also filed a memorandum in support of its summary judgment request. And it supported that request with its extensive CEO Declaration.[10] According to Simply Wireless, because T-Mobile was using Simply Wireless's trademark SIMPLY PREPAID in connection with the very same offerings made by Simply Wireless, T-Mobile was liable to Simply Wireless for the statutory tort of trademark infringement, under a theory called "reverse confusion."

T-Mobile's motion sought summary judgment on each of Simply Wireless's trademark infringement claims. Among its contentions, T-Mobile asserted that Simply

_____

Act; Count II alleged trademark infringement under Virginia statutory law; and Count IV alleged common law trademark infringement. In a fifth count, Simply Wireless alleged a single count of trademark dilution. Both parties consistently refer to those five counts in their various appellate submissions as the "trademark infringement claims." We also utilize that designation in several instances, referring to the five counts collectively as a package of trademark infringement claims.

[10] Rule 56(c)(4) of the Federal Rules of Civil Procedure spells out the requirements for the use of "Affidavits or Declarations" in summary judgment proceedings. It provides that

> [a]n affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

*See* Fed. R. Civ. P. 56(c)(4). Section 1746 of Title 28, entitled "Unsworn declarations under penalty of perjury," is located in the "Evidence; Documentary" Chapter of that Title. It provides that an unsworn declaration may be used to support, evidence, establish, or prove a matter, as required or permitted under federal law, if made in writing and properly subscribed by the person making it. The CEO Declaration in these proceedings has satisfied — without objection — the mandate of Rule 56(c)(4), as well as § 1746.

Wireless had not established that it owned the trademark SIMPLY PREPAID when T-Mobile first used it in mid-2014. More specifically, T-Mobile maintained that asserting a protectible interest in a common law trademark requires continuous and exclusive use thereof. And T-Mobile claimed that Simply Wireless had not demonstrated such continuous and exclusive use of the trademark SIMPLY PREPAID. T-Mobile alternatively asserted — by way of a footnote — that even if Simply Wireless could establish that it had accrued common law trademark ownership rights in SIMPLY PREPAID, Simply Wireless had nevertheless abandoned those rights due to three consecutive years of nonuse.[11] That is, according to T-Mobile, Simply Wireless had failed to use the trademark SIMPLY PREPAID for three years, from January 1, 2009 through December 31, 2011 (the "presumption period").[12]

---

[11] In its memorandum supporting summary judgment, T-Mobile argued an abandonment of the trademark SIMPLY PREPAID by Simply Wireless, and maintained that:

> Even if Plaintiff could establish some rights in the name Simply Prepaid, Plaintiff's failure to maintain continuous use still constitutes abandonment of those rights. "Non-use [of a mark] for three consecutive years . . . constitutes prima facie evidence of abandonment" and "a mandatory inference of intent not to resume use," which the alleged owner has the burden to rebut. *See Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 535-36 (4th Cir. 2000) (internal citations omitted). Plaintiff did not use the name Simply Prepaid for three consecutive years, triggering the presumption.

*See* J.A. 170 n.4 (brackets, ellipsis, and parenthetical in original).

[12] The district court and the parties agree that the presumption period spanned the three-year period from 2009 to 2011. During oral argument, it was clarified that the presumption period extended from January 1, 2009 until December 31, 2011.

2.

In February 2022, the district court conducted argument proceedings in Alexandria, Virginia, concerning the competing summary judgment motions. During those proceedings, the court focused on the competing positions of the parties concerning ownership of the common law trademark SIMPLY PREPAID, and also on the parties' contentions with respect to the abandonment issue.

According to Simply Wireless, the common law ownership of a trademark has two requirements — first, that the putative owner (here, Simply Wireless) be the first user of such a trademark and, second, that the putative owner has not abandoned the trademark. Simply Wireless maintained that it had first used the trademark SIMPLY PREPAID in 2002 and had never abandoned it. Simply Wireless's position was thus that it had always owned — and yet retained ownership of — the trademark SIMPLY PREPAID.

On the other hand, T-Mobile's primary position in the February 2022 court session was that the abandonment principles of the Lanham Act do not apply to a common law trademark.[13] T-Mobile primarily argued that a protectible interest in a common law

---

[13] The Lanham Act was enacted in 1946 and provides, inter alia, protection for trademarks by prohibiting infringements on the rights of trademark holders. *See* Pub. L. No. 79-489 (1946). The Act is codified at 15 U.S.C. §§ 1051-1127, and § 1127 provides that

> [a] mark shall be deemed to be "abandoned" if . . . its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

12

trademark requires its continued and exclusive use. If that proposition had been adopted by the district court as a controlling principle of law, an abandonment assessment would not have been required. According to T-Mobile, the relevant inquiry was whether Simply Wireless had continuously and exclusively used its trademark SIMPLY PREPAID until the alleged infringement thereof by T-Mobile in June 2014. And — T-Mobile argued — Simply Wireless had failed to do so.

During the February 2022 argument proceedings, the district court also sought the parties' positions on whether, if an abandonment assessment needed to be made by the court concerning the trademark SIMPLY PREPAID, any genuine and material factual disputes existed concerning whether there had been an abandonment by Simply Wireless. The parties then agreed on the legal principle that the Lanham Act's statutory presumption of abandonment is triggered by three consecutive years of nonuse. Nevertheless, the parties disputed whether Simply Wireless had intended — during the three-year presumption period — to resume use of the trademark SIMPLY PREPAID.

In early April 2022, the district court scheduled a "supplemental hearing" that specifically related to, inter alia, the abandonment issue. *See Simply Wireless, Inc.*, ECF No. 330. The court entered an order requesting the parties to respond to several issues, including the directive that they be prepared to address

> what [Simply Wireless] did during the three year period from 2009 through 2011 that evidenced its intent to resume the use of SIMPLY PREPAID within the foreseeable future and what relevance [Simply Wireless's] post-2011 conduct had with respect to whether it abandoned the use of SIMPLY PREPAID as of the end of the three year period[.]

13

*Id.* at 2. The court conducted its supplemental argument proceedings in late April 2022. At the conclusion of those proceedings, the court took the pending summary judgment motions under advisement.

D.

On October 24, 2022, the district court filed its Summary Judgment Order awarding summary judgment to T-Mobile on Simply Wireless's trademark infringement claims concerning the trademark SIMPLY PREPAID. The court therein also denied the summary judgment request interposed by Simply Wireless. Notably, the Summary Judgment Order explicitly ruled — favorably to Simply Wireless and against T-Mobile — that Simply Wireless had acquired common law ownership rights in the trademark SIMPLY PREPAID. The Court therein explained that

> to establish common law trademark ownership of the [trademark SIMPLY PREPAID], Simply Wireless need only establish that it (1) used the [trademark SIMPLY PREPAID] first and (2) that such use was deliberate and continuous, not sporadic, casual or transitory. Simply Wireless has satisfied both requirements. . . . Therefore, Simply Wireless accrued common law ownership rights in the [trademark SIMPLY PREPAID] and therefore may be divested of those rights only through its abandonment of the [trademark SIMPLY PREPAID].

*See* Summary Judgment Order 18-19.

The Summary Judgment Order then turned to and conducted the abandonment analysis provided for in § 1127 of Title 15. Pursuant thereto, a rebuttable presumption of abandonment is established when a trademark challenger can show the lack of use of a valid trademark by the putative owner for three consecutive years. If the § 1127 statutory presumption of abandonment applies, the putative owner — such as Simply Wireless — is

14

entitled to rebut the presumption by evidence that it intended, during the three-year period of nonuse, to resume its use of the trademark. According to the Summary Judgment Order, "Simply Wireless did not use the SIMPLY PREPAID mark in commerce for over three-and-a-half years, from 2009 to July 31, 2012, thereby triggering the presumption of abandonment." *See* Summary Judgment Order 19.

The Summary Judgment Order thus turned to an assessment of whether Simply Wireless had presented sufficient evidence to rebut the presumption of abandonment, that is, to demonstrate that Simply Wireless intended — during the presumption period — to resume its use of SIMPLY PREPAID. The Summary Judgment Order observed that Simply Wireless, to prove such use, was relying on the following evidence:

> (1) its annual renewal of the simplyprepaid.com domain; (2) discussions it had, beginning in 2011, with Ignite Media — an online retail promotional company — about selling cellular phones and airtime via toptvstuff, and its subsequent actual use of the [trademark SIMPLY PREPAID] on toptvstuff beginning in July 2012; and (3) the declaration from its CEO submitted in opposition to T-Mobile's motion for summary judgment that Simply Wireless always intended to resume use of the [trademark SIMPLY PREPAID].

*See* Summary Judgment Order 21-22.

After assessing the summary judgment record and the competing contentions, the Summary Judgment Order concluded that Simply Wireless had

> failed as a matter of law to produce sufficient evidence that would allow a reasonable factfinder to conclude that Simply Wireless formed the intent to resume use of the SIMPLY PREPAID mark during the statutory three-year period of non-use (2009-2011) . . . and that such resumption would be in the reasonably foreseeable future[.]

15

*See* Summary Judgment Order 26-27.  The court therefore awarded summary judgment to T-Mobile on Simply Wireless's claims of trademark infringement.

Simply Wireless has timely appealed that ruling, filing separate notices of appeal on November 21, 2022 and on November 29, 2022.  We have consolidated those appeals and possess jurisdiction under 28 U.S.C. § 1291.

II.

We review de novo a district court's disposition of cross-motions for summary judgment.  *See Fusaro v. Howard*, 19 F.4th 357, 366 (4th Cir. 2021).  "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure."  *See Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011).  And a summary judgment award is only appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  In assessing T-Mobile's summary judgment award, we are obliged to accept and view the evidence in the light most favorable to Simply Wireless — as the party opposing T-Mobile's motion — and to draw all reasonable inferences in Simply Wireless's favor.  *See George & Co. v. Imagination Ent. Ltd.*, 575 F.3d 383, 392 (4th Cir. 2009).

Of importance, our Court has recognized that the intent-to-resume-use inquiry underlying an abandonment analysis "is an intensely factual question."  *See Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 538 (4th Cir. 2000) ("*Emergency One I*").  So long as the evidence on an abandonment inquiry goes beyond "simply asserting a vague,

16

subjective intent to resume use of a mark at some unspecified future date," the intent issue is "rarely amenable to summary judgment." *See ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 150 (2d Cir. 2007) (internal quotation marks omitted).

### III.

Simply Wireless appeals from the Summary Judgment Order, maintaining that genuine disputes of material fact have been shown on the abandonment issue and that summary judgment is therefore precluded. As explained herein, we are satisfied that such disputes have been established concerning, inter alia, Simply Wireless's timely intent to resume use of its trademark SIMPLY PREPAID. As a result, we are constrained to vacate and remand.

### A.

### 1.

In resolving T-Mobile's summary judgment motion, the district court applied the abandonment test spelled out in 15 U.S.C. § 1127. Pursuant thereto, three years of nonuse of a valid common law trademark creates a rebuttable presumption of abandonment. At that point, the burden shifts to the putative owner of the trademark — i.e., Simply Wireless — to demonstrate that it intended to resume use of its trademark, and that such intention was formed during the three-year presumption period. *See Emergency One I*; *see also Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 266 (4th Cir. 2003) ("*Emergency One II*"). We have also explained that, during the critical three-year presumption period, the putative owner must intend to resume its use of the trademark in

17

the "reasonably foreseeable future," rather than "at some unspecified future date." *See Emergency One I*, 228 F.3d at 537.

2.

In this appeal, Simply Wireless does not challenge the district court's finding that it failed to use the trademark SIMPLY PREPAID for the three-year period from the beginning of 2009 to the end of 2011. That unchallenged finding triggers the statutory presumption of abandonment. But Simply Wireless does not concede the most important issue in this litigation. That is, Simply Wireless plants its feet firmly on the proposition that it has presented sufficient evidence to show its intent — during the presumption period — to resume use of its trademark SIMPLY PREPAID.

Again, our Court has recognized that the intent to resume use inquiry "is an intensely factual question." *See Emergency One I*, 228 F.3d at 538. In *Emergency One I*, the putative owner of a trademark — a manufacturer of rescue vehicles — sued a competing manufacturer for trademark infringement. In response, the alleged infringer claimed that the putative owner had abandoned its trademark. The district court decided that a trial was warranted, and a single factual issue was submitted to the jury: whether the contested trademark had been abandoned.

After the jury found in favor of the putative owner — i.e., that the owner had not abandoned its trademark — the infringer appealed. It urged our Court to reverse, arguing, inter alia, that it was entitled to judgment as a matter of law due to an abandonment under the three-year provision of § 1127. In rejecting that contention, our *Emergency One I* decision reasoned that, although the putative owner had not used its trademark for three

18

years, it had proved its timely intent to resume use thereof. That showing of intent was sufficient to defeat the infringer's position on abandonment. And as the Second Circuit later held when it adopted our *Emergency One I* precedent, so long as a putative trademark owner has presented evidence beyond "simply asserting a vague, subjective intent to resume use of a mark at some unspecified future date," resolution of the intent inquiry is "rarely amenable to summary judgment." *See ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 150 (2d Cir. 2007) (internal quotation marks omitted).

Those decisions present two substantial legal obstacles for T-Mobile's effort to secure an affirmance of the Summary Judgment Order. That is, (1) the intent to resume use inquiry "is an intensely factual question," as we held in *Emergency One I*, and (2) the intent inquiry is "rarely amenable to summary judgment," as the Second Circuit ruled when it adopted our *Emergency One I* precedent.

In order to establish its timely intention to resume use of its common law trademark SIMPLY PREPAID, Simply Wireless relies on evidence that undermines the abandonment ruling of the district court. The CEO Declaration explicitly explains Simply Wireless's intentions concerning its use of the trademark SIMPLY PREPAID. It also recounts Simply Wireless's 2011 negotiations with Ignite Media concerning the marketing of products under the trademark SIMPLY PREPAID. And the Declaration then summarizes, inter alia, the resulting sales transactions.

Simply Wireless thus maintains that the summary judgment record — particularly the CEO Declaration — establishes for summary judgment purposes Simply Wireless's timely intent to resume use of its trademark SIMPLY PREPAID, and that genuine issues

19

of material fact in that regard justify a jury trial. In support of that proposition, Simply Wireless asserts that the CEO Declaration is strongly corroborated by its contents, including the following:

- the 12-slide deck sent to Simply Wireless by Ignite Media in January 2011 describing a partnership between the businesses;

- the July 2012 proposed agreement between Simply Wireless and Ignite Media about marketing cell phones and prepaid airtime under the trademark SIMPLY PREPAID; and

- Simply Wireless's post-2011 sales under the trademark SIMPLY PREPAID.

3.

For its part, T-Mobile contends on appeal that the Summary Judgment Order correctly ruled that the CEO Declaration is overly vague and indefinite, and that the Declaration fails to sufficiently support Simply Wireless's assertion of a timely intention to resume use of its trademark SIMPLY PREPAID. T-Mobile even maintains that the CEO Declaration is contradicted — rather than supported — by its own contents. And, in T-Mobile's view, the Summary Judgment Order correctly ruled that Simply Wireless failed to establish its timely intent to resume its use of the trademark SIMPLY PREPAID.

Perhaps lacking confidence in its position supporting an affirmance of the Summary Judgment Order's abandonment ruling, T-Mobile pursues an alternative argument for sustaining the judgment challenged by Simply Wireless. T-Mobile argues that, even if the district court erred in making its abandonment ruling, T-Mobile is nevertheless entitled to an affirmance of the summary judgment award because the court fatally erred in applying the statutory abandonment test to a common law trademark. Maintaining that the

20

abandonment inquiry applies only to registered trademarks, and that the inquiry does not

apply to common law trademarks such as SIMPLY PREPAID, T-Mobile contends that the

court erred in addressing the abandonment question.

## B.

## 1.

Simply Wireless maintains that the Summary Judgment Order mischaracterized the

CEO Declaration and failed to construe the reasonable inferences drawn therefrom in the

light most favorable to Simply Wireless.  And we agree that the CEO Declaration expressly

confirms Simply Wireless's timely intention to resume its use of the trademark SIMPLY

PREPAID.  In ¶ 10 thereof, the Declaration states, in pertinent part:

> Simply Wireless never intended to abandon SIMPLY PREPAID.  I and
> Simply Wireless' co-owner, my brother Robert Qureshi, always intended to
> resume use of the SIMPLY PREPAID trademark, continuously sought
> business opportunities for using SIMPLY PREPAID, and resumed its use in
> 2012.

*See* J.A. 676.  In its very next paragraph, the Declaration recounts Simply Wireless's 2011

negotiations with Ignite Media concerning the marketing of products under its trademark

SIMPLY PREPAID:

> For example, in early 2011, Simply Wireless began negotiating with Ignite
> Media, an online retail promotional company, about selling cellular phones
> and airtime via the well-trafficked retail website www.topTVstuff.com.
> Attached as Exhibit 6 are representative examples of communications
> between Simply Wireless and Ignite Media during this time frame.  Those
> negotiations focused on the use of the SIMPLY PREPAID mark, resulting in
> sales in 2012 under the SIMPLY PREPAID mark for sales of prepaid mobile
> phones, airtime, and accessories.

*Id.* at 676-77.

21

As our fallen colleague Judge Michael explained more than 20 years ago in *Emergency One I*, a trademark owner "cannot defeat an abandonment claim, as well as the purposes of the Lanham Act, by simply asserting a vague, subjective intent to resume use of a mark at some unspecified future date." *See Emergency One I*, 228 F.3d at 537. Rather than being vague or subjective, however, the CEO Declaration is specific and predicated on personal knowledge. As such, the Declaration strongly supports Simply Wireless's essential and timely intent to resume use of its contested trademark. *See GSH Trademarks Ltd. v. Sia "Baltmark Invest,"* No. 1:20-cv-0271, 2021 WL 1999791, at *4-5 (E.D. Va. May 18, 2021) (deeming single knowledgeable witness's testimony sufficient to establish intent to resume use of trademark).

How the evidence will impact a summary judgment issue usually hinges on whether it is sufficiently specific and non-conclusory. For example, "conclusory testimony" — amounting to "little more than a denial in a pleading" — will not defeat the presumption of a trademark abandonment. *See Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990). The CEO Declaration, however, is specific and far from conclusory. It explicitly reveals Simply Wireless's intent, during the presumption period, to resume its use of the trademark SIMPLY PREPAID. And the Declaration provides specific support for the proposition that, "in early 2011, Simply Wireless began negotiating with Ignite Media" to market cell phones and airtime through www.toptvstuff.com. *See* J.A. 676. As the Declaration recites, "[t]hose negotiations focused on the use of the SIMPLY PREPAID mark." *Id.* at 677.

22

The CEO Declaration is thus sufficient to establish — for summary judgment purposes — that Simply Wireless timely intended to resume its use of the trademark SIMPLY PREPAID. CEO Qureshi carefully explained in some detail Simply Wireless's plan to resume such use, and he named the third party (Ignite Media) that was negotiating with Simply Wireless during the presumption period. The Declaration even identified the channel for distribution of Simply Wireless's products (toptvstuff.com) in connection with the trademark SIMPLY PREPAID.

The district court thus erred in ruling that the CEO Declaration was overly "vague and indefinite," and that it failed to show that Simply Wireless timely intended to resume its use of its trademark SIMPLY PREPAID. In so ruling, the district court had to reject — i.e., simply disbelieve — the Declaration's express statement that Simply Wireless intended, during the presumption period, to resume its use of the trademark SIMPLY PREPAID. And the court also had to reject the Declaration's recounting of the steps taken by Simply Wireless to resume its use of the trademark SIMPLY PREPAID, including its early 2011 negotiations with Ignite Media that "focused on the use of the SIMPLY PREPAID mark." *See* J.A. 677. Because this is a summary judgment proceeding, however, the district court was not entitled to make such adverse credibility findings. *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015). Put simply, the summary judgment record had to be accepted in the light most favorable to Simply Wireless, as the non-moving party.

23

2.

The CEO Declaration also explains the relevance of the January 2011 email to CEO Qureshi from Ignite Media endorsing the slide deck. Focusing on Simply Wireless's "2011 Objectives," the slide deck details the plans agreed upon for Simply Wireless's online sales and marketing of wireless phones, accessories, and airtime, in addition to describing Ignite Media's marketing capabilities. *See* J.A. 903-14. And the slide deck envisioned that Simply Wireless would be "extend[ing] the success metrics of HSN and QVC" through a partnership with Ignite Media. *Id.* at 904. Through HSN and QVC, Simply Wireless had marketed cell phones that could be refilled with airtime sold in connection with its trademark SIMPLY PREPAID.

Resisting the compelling factual recitation of the CEO Declaration, T-Mobile argues that it is contradicted by its own contents and the summary judgment record. For example, T-Mobile asserts that the slide deck fails to mention the trademark SIMPLY PREPAID — but instead was stamped with the name "Simply Wireless." In its view, the Declaration's statement that the negotiations with Ignite Media "focused on the use of the SIMPLY PREPAID mark" was also contradicted. *See* J.A. 677. In short, however, there is no such contradiction. In assessing a summary judgment award, we are obliged to construe the evidence in the light most favorable to Simply Wireless. And as this Court has previously recognized, even circumstantial evidence — or reasonable inferences therefrom — can defeat a summary judgment motion. *See Roehling v. Nat'l Gypsum Co. Gold Bond Bldg. Prods.*, 786 F.2d 1225, 1229 (4th Cir. 1986) (reversing award of summary judgment where

24

trial court "failed to draw the reasonable inferences from plaintiff's circumstantial evidence").

Although the 12-slide deck does not mention the trademark SIMPLY PREPAID, it corroborates the CEO Declaration's confirmation of Simply Wireless's intent to resume its use thereof. For example, the slide deck relies on "extend[ing] the success metrics of HSN and QVC." *See* J.A. 904. Through HSN and QVC, Simply Wireless had marketed cell phones for years that could be refilled with airtime sold in connection with its trademark SIMPLY PREPAID. When Simply Wireless filled orders placed through HSN and QVC, it included a "thank you" letter that encouraged customers to visit the Simply Prepaid website to refill airtime for their newly purchased phone. *Id.* at 782. A reasonable jury, therefore, could accept the slide deck as compelling evidence that the 2011 negotiations between Simply Wireless and Ignite Media "focused on the use of the SIMPLY PREPAID mark." *Id.* at 677.

3.

The July 2012 proposed agreement between Simply Wireless and Ignite Media was also part of and further explained in the CEO Declaration. The Declaration's explanation was that Simply Wireless intended — during the three-year presumption period — to resume its use of the trademark SIMPLY PREPAID. And a trial court assessing a summary judgment motion should "consider evidence and testimony regarding . . . practices that occurred before or after the three-year statutory period to infer . . . intent to resume use during the three-year period." *See Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 1392 (Fed. Cir. 2010). For example, if an "invoice was dated seven months after the

25

expiration of the nonuse period," it could corroborate an "intent to use *during* the nonuse period." *See GSH Trademarks Ltd.*, 2021 WL 1999791, at *5 (emphasis in original). Like an invoice, Ignite Media forwarded the July 2012 agreement to Simply Wireless, addressed as "Simply Wireless d/b/a Simply Prepaid Inc" — just months after the presumption period had concluded. *See* J.A. 897.

According to the Summary Judgment Order, the proposed agreement with Ignite Media failed to establish that Simply Wireless actually intended to resume its use of the SIMPLY PREPAID trademark, and that such intent was formed within the presumption period. Again, the facts must be viewed in favor of Simply Wireless. And — for summary judgment purposes — the 2011 negotiations actually led to and resulted in the 2012 proposed agreement. And those negotiations "focused on the use of the SIMPLY PREPAID mark, resulting in sales in 2012 under the SIMPLY PREPAID mark." *See* J.A. 677.

The Summary Judgment Order discussed an August 2012 email from Ignite Media to CEO Qureshi, regarding an "initial testing budget" that was to be used for the trademark SIMPLY PREPAID on toptvstuff.com. *See* Summary Judgment Order 23. And the district court mentioned a June 2014 email, which referred to SIMPLY PREPAID as one of the potential names for a new website. The proposed agreement and those emails, however, according to the Summary Judgment Order, most likely reflected "preliminary, exploratory efforts," rather than proof of a definite plan to resume use of the trademark SIMPLY PREPAID. *Id.* Unfortunately, the court construed that evidence in isolation, and in favor of T-Mobile, rather than in favor of Simply Wireless. Viewed in the proper light, a jury

26

could find that the proposed agreement with Ignite Media supported Simply Wireless's timely intent to resume use of its trademark SIMPLY PREPAID, and that such intent was formed during the three-year presumption period. The proposed agreement therefore supports Simply Wireless's timely intent to resume use of its trademark SIMPLY PREPAID, as explained and confirmed by the CEO Declaration.

4.

Simply Wireless's sales in 2012 and 2013 involving its trademark SIMPLY PREPAID provide further support for its timely intent to resume use of its trademark SIMPLY PREPAID. The Summary Judgment Order, however, characterized Simply Wireless's post-2011 sales as "sporadic, [casual], and transitory." *See* Summary Judgment Order 24. On that basis, T-Mobile argues that those sales fail to corroborate Simply Wireless's timely intent to resume use of its trademark SIMPLY PREPAID. In these circumstances, however, an assessment of whether those events were "sporadic," "casual," or "transitory," was for a jury.

Even if Simply Wireless's modest $15,500 in sales in 2012 and 2013 — involving 277 transactions with 243 consumers in 44 states — are deemed to be paltry, they are additional evidence of Simply Wireless's timely intent to resume use of its trademark. Our *Emergency One I* decision ruled more than 20 years ago that the promotional use of a trademark on clothing and merchandise could rebut a presumption of abandonment. As Judge Michael recognized, the "continuous promotion of the brand by using it on hats, T-shirts, tote bags, and souvenir nameplates is evidence of some intent to resume use of the

27

mark." *See* 228 F.3d at 537.[14]  Sales made using the trademark SIMPLY PREPAID, even if not a commercial triumph, should not be disregarded.  Simply Wireless's transactions under its trademark SIMPLY PREPAID in 2012 and 2013 further corroborate its timely intent — between 2009 and 2011 — to resume use thereof.

C.

1.

a.

Having resolved that the district court erred in its abandonment ruling, we turn to T-Mobile's alternative contention for affirmance of the judgment.  More specifically, T-Mobile alternatively challenges as erroneous the court's use of the § 1127 statutory abandonment test in assessing the ownership of a common law trademark.  According to T-Mobile, what it called the "continuous use" test should have been applied.  *See, e.g.*, Br. of Appellee 48.  And because Simply Wireless had failed to establish continuous use, T-Mobile argues, Simply Wireless never acquired common law ownership of the trademark SIMPLY PREPAID.  As a result, summary judgment in T-Mobile's favor is warranted on that ground, even if the Summary Judgment Order's abandonment ruling was erroneous.  Before assessing the merits of that alternative contention, we must evaluate whether it can be pursued by T-Mobile in the absence of a cross-appeal.

---

[14] Pursuant to our *Emergency One I* decision, the promotional use of a trademark can rebut a presumption of abandonment.  And from 2002 to 2019, Simply Wireless displayed its trademark SIMPLY PREPAID in its Virginia headquarters in Fairfax County.  *See* J.A. 681.  Simply Wireless's promotional use during that time period is compelling evidence of its timely intent to resume use of its trademark SIMPLY PREPAID.

28

b.

Although T-Mobile did not notice a cross-appeal from the Summary Judgment Order, it can be entitled to pursue its alternative contention "as long as the acceptance of the argument would not lead to a reversal or modification of the judgment rather than an affirmance." *See JH ex rel. JD v. Henrico Cnty. Sch. Bd.*, 326 F.3d 560, 567 n.5 (4th Cir. 2003). Otherwise stated, the filing of a cross-appeal is "unnecessary where an appellee seeks nothing more than to preserve a judgment in its favor." *See Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 155 (4th Cir. 2012) (cleaned up). And that which T-Mobile seeks here is an affirmance of summary judgment in its favor, even if the district court's abandonment ruling was erroneous. Put succinctly, T-Mobile is entitled to "urge in support of [the summary judgment award] any matter appearing in the record, although [its] argument may involve an attack upon the reasoning of the lower court." *See El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999). Consistent therewith, we are content to evaluate the alternative contention for affirmance being pursued by T-Mobile, that is, that the summary judgment in its favor can be affirmed in any event.

2.

In pursuing its alternative contention, T-Mobile challenges the legal test that was applied in the Summary Judgment Order. T-Mobile maintains that the district court's inquiry into "continuous use" of the contested trademark — rather than an abandonment thereof — should apply here because Simply Wireless owned only a common law trademark. On the other hand, Simply Wireless maintains that, when common law ownership of a trademark has been established, the § 1127 statutory abandonment test is

29

the only proper inquiry for a judicial assessment of whether ownership rights in a trademark have been lost. Although the parties characterize this dispute differently, the legal issue presented is not complicated — i.e., does the statutory abandonment test of § 1127 of Title 15 apply to a common law trademark? If so, the district court properly applied the statutory abandonment test, and T-Mobile's alternative theory for affirmance must be rejected.

3.

In support of its "continuous use" contention, T-Mobile relies primarily on our 2009 decision in *George & Co. v. Imagination Ent. Ltd.* We therein ruled that the putative owner of a common law trademark (such as Simply Wireless) is entitled to assert priority over a junior user (such as T-Mobile) "so long as that owner continues to make use of the mark." *See* 575 F.3d 383, 400 (4th Cir. 2009). But that decision did not preclude the district court from applying the statutory abandonment inquiry. As Judge Hamilton explained in *George & Co.* (applying § 1127), when a common law trademark owner has ceased use of "the mark without an intent to resume use in the reasonably foreseeable future," then "the mark is said to have been abandoned." *Id.* at 400 (citing *Emergency One I*, 228 F.3d at 535 (internal quotation marks omitted)).[15] Put simply, when common law ownership of a

---

[15] T-Mobile's effort to also rely on the Third Circuit's decision in *Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209 (3d Cir. 2021), is not persuasive. That decision ruled that the first party to adopt a mark is entitled to assert its ownership "so long as it continuously uses the mark in commerce." *Id.* at 219. But that discussion was cabined to the initial accrual of ownership rights in a common law trademark. Moreover, the court of appeals therein actually determined that the common law owner of the contested trademark "had established continuous use prior to" the junior user's first use of the trademark, precluding a statutory abandonment. *Id.* For similar reasons, T-Mobile's reliance on *Airs Aromatics*
(Continued)

trademark has accrued, those rights persist until — and unless — they are legally abandoned.

In support of T-Mobile's proposition that § 1127 does not apply to disputes over common law trademarks, T-Mobile resorts to several out-of-circuit authorities, including a district court decision from California. *See Spin Master, Ltd. v. Zobmondo Ent., LLC*, 944 F. Supp. 2d 830 (C.D. Cal. 2012). In *Spin Master*, the California trial court ruled that "the inquiry into common law priority is not controlled by the requirements of abandonment." *Id.* at 852. We are bound by our precedent, however, and thus reject T-Mobile's alternative basis for affirmance. Our *Emergency One I* and *Emergency One II* decisions each involved a common law trademark. In applying the statutory abandonment test of § 1127, *Emergency One II* explained that priority to use an "unregistered trademark . . . is determined by the first actual use of the mark in a genuine commercial transaction." *See* 332 F.3d at 267 (cleaned up). But our good colleague Judge Traxler also recognized that such priority rights "can be lost through abandonment." *Id.* at 268 (citing *Emergency One I*, 228 F.3d at 535-36). In this situation, after Simply Wireless secured its common law ownership of the trademark SIMPLY PREPAID, the relevant inquiry was whether the trademark had been abandoned, under the two-part test of § 1127. The district court was correct in applying the statutory abandonment test.

---

*LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595 (9th Cir. 2014), is not compelling.

31

In ruling that the abandonment inquiry applies in an ownership dispute concerning a common law trademark, we reject T-Mobile's invitation to stray from our precedent in the *Emergency One* decisions.  In so doing, we also join at least two of our sister circuits and the applicable Restatement in applying the abandonment inquiry to a dispute involving a common law trademark.  *See, e.g.*, *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 293-94 (5th Cir. 2004); *Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329-30 (11th Cir. 2008); *see also* Restatement (Third) of Unfair Competition § 30 cmt. a. (Am. Law Inst. 1995) ("The [abandonment] defense is applicable to infringement claims at common law and to claims for the infringement of marks registered under the Lanham Act.").  In these circumstances, T-Mobile's alternative contention for affirmance must be rejected.

IV.

Pursuant to the foregoing, we vacate the Summary Judgment Order and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

32

RUSHING, Circuit Judge, concurring in the judgment:

I agree that Simply Wireless has—just barely—raised a genuine issue of material fact about whether it intended, during the presumption period, to resume bona fide use of the SIMPLY PREPAID mark in the reasonably foreseeable future. I write separately to clarify the applicable legal standard for abandonment cases at summary judgment and to explain how that standard applies here.

Under the Lanham Act, a trademark owner's failure to "use" a trademark for three consecutive years triggers a presumption of abandonment. 15 U.S.C. § 1127; *see also id.* ("'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade . . . ."). "Once the presumption is triggered, the legal owner of the mark has the burden of producing evidence of either actual use during the relevant period or intent to resume use" in the "reasonably foreseeable future." *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 535–536 (4th Cir. 2000) (internal quotation marks omitted). Because Simply Wireless failed to use the SIMPLY PREPAID mark for three years, it bears the burden of producing evidence of intent to resume use.

Assessing "[w]hether the owner has produced evidence sufficient to meet that burden is a question for the court" to decide on summary judgment, applying well-established standards. *Id.* at 540. Generally speaking, "intent is always a subjective matter of inference and thus rarely amenable to summary judgment." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 150 (2d Cir. 2007) (internal quotation marks omitted). "At the same time, however, the summary judgment rule would be rendered sterile" in the "context of an abandonment dispute" if the "mere incantation of intent or state of mind" could defeat the

33

presumption of abandonment. *Id.* (internal quotation marks and brackets omitted). For this reason, our Court and other courts have held that a "trademark owner cannot rebut a presumption of abandonment merely by asserting a subjective intent to resume use of the mark at some later date." *Id.* (collecting cases); *see also Emergency One*, 228 F.3d at 537 (holding that the "owner of a trademark cannot defeat an abandonment claim . . . by simply asserting a vague, subjective intent to resume use of a mark at some unspecified future date"). "Rather, to rebut a presumption of abandonment on a motion for summary judgment, the mark owner must come forward with evidence with respect to what outside events occurred from which an intent to resume use during the nonuse period may reasonably be inferred." *ITC*, 482 F.3d at 150 (internal quotation marks and ellipsis omitted); *see also Emergency One*, 228 F.3d at 537, 540.\*

Simply Wireless has presented enough evidence to reasonably infer intent to resume use during the presumption period, satisfying its burden of production. According to its CEO's declaration, Simply Wireless "began negotiating with Ignite Media" in "early 2011" "about selling cellular phones and airtime" through Ignite Media's website and those "negotiations focused on the use of the SIMPLY PREPAID mark." J.A. 676–677; *see also*,

---

\* The majority rightly cites this caselaw, *see* Maj. Op. 16–17, 19, but its selective paraphrase could lead readers to mistakenly believe that *anything* more than a subjective intent to resume use will defeat summary judgment in an abandonment case. That is not our law. *See Emergency One*, 228 F.3d at 540. Nor is it the rule of the *ITC* decision, which the majority endorses. *See* Maj. Op. 17, 19. There, the Second Circuit held that the mark owner failed to adduce evidence from which a reasonable jury could infer intent to resume use, even though the owner marshaled evidence of corporate meeting minutes, marketing studies, minor sales, trade show exhibitions, and business communications involving the mark before, during, and after the presumption period. *See ITC*, 482 F.3d at 151–153.

34

*e.g.*, *Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 1391 (Fed. Cir. 2010) (explaining that owner's "enter[ing] into discussions" with third party about selling products bearing the mark could support an intent to resume use, even where no agreement resulted). A January 2011 communication from Ignite Media to Simply Wireless somewhat corroborates this account, although it never mentions SIMPLY PREPAID. More support comes from evidence of a proposed partnership agreement between Simply Wireless and Ignite Media in July 2012—six months after the close of the presumption period—and sales using the SIMPLY PREPAID mark between July 2012 and April 2013 on Ignite Media's website. *Cf. ITC*, 482 F.3d at 152–153 (holding that "unsolicited proposals" regarding use of the owner's trademark did not defeat the presumption of abandonment because there was "no evidence" that the owner "seriously considered these unsolicited proposals in a manner that would permit a reasonable jury to infer its intent to resume use"). Together, this evidence could permit a reasonable jury to infer that, during the presumption period, Simply Wireless formed an intent to resume bona fide use of the mark in the reasonably foreseeable future.

Absent this, Simply Wireless's evidence would be woefully insufficient. The CEO's declaration that Simply Wireless "never intended to abandon SIMPLY PREPAID" and "always intended to resume use of the SIMPLY PREPAID trademark," J.A. 676, is an assertion of "vague, subjective intent to resume use," *Emergency One*, 228 F.3d at 537. Such statements "cannot defeat an abandonment claim," *id.*, so the district court was right to discount them, contrary to what the majority suggests, *see* Maj. Op. 22–23. Relatedly, Simply Wireless's alleged display of the SIMPLY PREPAID mark "on the [interior] walls"

35

of its office does not show an intent to resume bona fide use in the reasonably foreseeable future.  J.A. 681; *see Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990) (explaining that the Lanham Act requires showing "'intent to resume use'" not merely "'intent not to abandon'" (quoting *Exxon Corp. v. Humble Expl. Co.*, 695 F.2d 96, 102 (5th Cir. 1983)); *cf.* Maj. Op. 28 n.14.  Nor does renewing the domain name for its website, which remained dormant from 2009 to 2014.  *See Specht v. Google Inc.*, 758 F. Supp. 2d 570, 593 (N.D. Ill. 2010) (maintaining "a functional yet almost purposeless website" cannot "prevent the abandonment of a mark"), *aff'd*, 747 F.3d 929 (7th Cir. 2014).  And the sales from 2015 onward are too far removed from the presumption period to reasonably infer an intent to resume use.  *See, e.g.*, *ITC*, 482 F.3d at 152 (holding that sales occurring three years after presumption period were "insufficient to support the necessary inference that, *in the non-use period*, [the owner] maintained an intent to resume use"); *cf.* Maj. Op. 9 n.8.  Even Simply Wireless's strongest evidence—the CEO declaration—is undercut by its reliance on a purportedly "representative example[]" of the "communications between Simply Wireless and Ignite Media" in 2011 that makes *no mention* of SIMPLY PREPAID.  J.A. 677; *see also* Maj. Op. 25.

For these reasons, a jury could reasonably infer, as the district court did, that between 2009 and 2011 Simply Wireless did not intend to resume bona fide use of the mark in the reasonably foreseeable future.  But that same jury could also infer intent to resume use.  Therefore, Simply Wireless's "equivocal" evidence is enough to satisfy its burden of production at summary judgment.  *Emergency One*, 228 F.3d at 538.  Because the majority reaches the same ultimate conclusion, I respectfully concur in the judgment.

36